579 So.2d 118 (1991)
PHIBRO RESOURCES CORP. and Salomon, Inc., Appellant,
v.
STATE, Department of Environmental Regulation; Conserv, Inc.; and Mobil Mining and Minerals Co., Appellees.
No. 90-50.
District Court of Appeal of Florida, First District.
January 23, 1991.
On Motion for Rehearing and Rehearing May 8, 1991.
*119 Alan C. Sundberg and Jacob D. Varn, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for appellant.
David K. Thulman, Asst. General Counsel, Tallahassee, for Department of Environmental Regulation.
Roy C. Young, of Young, Van Assenderp, Varnadoe & Benton, P.A., William H. Green and James S. Alves, of Hopping, Boyd, Green & Sams, Tallahassee, for Conserv and Mobil, appellees.
On Motion for Rehearing and Rehearing En Banc May 8, 1991.
ERVIN, Judge.
Appellants, Phibro Resources Corp. and its corporate parent, Salomon, Inc., appeal a final administrative order entered by the Department of Environmental Regulation (DER or department), dismissing their petitions for formal administrative hearing. In their petitions, appellants had challenged two consent orders entered by the department with Conserv, Inc., the current owner and operator of a phosphate fertilizer manufacturing facility located in Polk County, Florida, and with Mobil Mining and Minerals Company (Mobil), a former owner of the facility. The consent orders represented an attempt to remedy the pollution of groundwater beneath the site of the facility. In its order of dismissal, the department ruled that Phibro, a former owner and operator of the facility, which was not given the opportunity to participate in either of the two consent orders, lacked the requisite standing as a substantially interested party to be allowed a section 120.57[1] hearing regarding any effect the orders may have had on Phibro's interests. As an additional reason for dismissal, the department stated that Salomon's petition was untimely, because it was not filed within the required twenty-one days from Salomon's receipt of notice of the consent orders. We reverse and remand with directions to accord both Phibro and its corporate parent Salomon a section 120.57 hearing.
The facts alleged in Phibro's petition are as follows: Mobil operated the facility in question until 1968, when it ceased operations. In 1974, Phibro acquired the facility and continued to operate it until 1982, at which time it transferred ownership and operation to its subsidiary Conserv. Subsequently in 1983, Phibro sold Conserv to another owner. In July 1985, DER issued warning notices to Conserv, Phibro, and Mobil, reciting that pollutants exceeding levels permissible in class II groundwaters had been detected at the property boundary of the Conserv facility site. Phibro was specifically warned that former owners like itself could be held responsible for their operations if they had contributed to the present state of contamination.[2]
In 1989, following notice to Phibro and Salomon that DER intended to enter into consent orders with Conserv and Mobil only, Phibro and Salomon petitioned for a formal administrative hearing. Among other measures, the remedial acts in the proposed orders involved construction of a containment system, which would consist of a number of wells surrounding a portion of the facility, designed to act as a hydraulic barrier to prevent the further migration of contaminated groundwater. Phibro and Salomon alleged that this would not restore the groundwater to its former condition, but in fact would allow continued migration of pollutants in such waters and would lead to additional contamination, thereby increasing the liability which DER had asserted against Phibro. The consent orders with Conserv and Mobil specifically recited that the facility had been discharging pollutants into the groundwater on or before *120 1982, during a period of time which coincided with Phibro's ownership and operation of the facility. The consent orders also reserved all the department's "rights against all past and present owners and operators of the lands" north of the facility. Moreover, the order with Conserv concluded that if it were determined that Conserv had not complied with its obligations under the order, the department reserved the right to enforce the terms of the order "or to take whatever other actions it deems appropriate."
In its final order dismissing the petitions of Phibro and Salomon, the department, relying upon Agrico Chem. Co. v. Department of Envtl. Reg., 406 So.2d 478 (Fla. 2d DCA 1981), review denied sub nom. Freeport Sulphur Co. v. Agrico Chem. Co., 415 So.2d 1359 (Fla. 1982), and review denied sub nom. Sulphur Terminals Co. v. Agrico Chem. Co., 415 So.2d 1361 (Fla. 1982), stated that Phibro had failed to show a substantial interest sufficient to warrant the initiation of a section 120.57 proceeding in that it had neither demonstrated injury in fact of sufficient immediacy to warrant a hearing, nor had it shown that its affected interest was of the type or nature that chapter 403 was designed to protect. The department stated that the petition merely alleged speculative injury to an entity which might at sometime in the future be held liable for such violation, if the settlement executed between the department and the two other alleged violators failed to resolve the violation fully.
In so concluding, DER observed that Phibro had alleged that its potential liability was dependent upon three contingencies: first, that the terms of the consent orders would be insufficient to remedy the contamination; second, that if the consent orders failed, the department would then take enforcement action against Phibro; and third, that Phibro would ultimately be found liable. The department was of the view that all three of the contingencies depended in whole or in part upon the volitional acts of others, primarily the discretion of the department to decide whether or not to prosecute Phibro. The department observed that if Phibro's fears became true and the department thereafter decided to pursue an enforcement action against it, Phibro could then raise all of its available defenses, including the defense that the contamination had increased due to the inherent flaws in the remediation plan as outlined in the consent orders. The department thereupon decided that because it was clear that certain volitional acts of the agency must first occur before any injury to Phibro could exist, dismissal of the petition for lack of standing was appropriate.
We disagree with both the department's reasoning and its conclusions. In so deciding we do not disavow the holdings of those judicial decisions relied upon by the department in its order,[3] or those decisions the department cited in its brief.[4] Unlike the instant case, however, all of the cases cited by appellee involved circumstances in which the person allegedly affected by administrative action sought initial access into the administrative proceeding. None involved a situation, such as here, in which the person seeking an administrative hearing had previously achieved both access and party status to the proceeding.
Our conclusion in this regard requires that we examine carefully the pertinent provisions of the 1974 Administrative Procedure Act (APA), furnishing adjudicatory proceedings to parties or persons whose substantial interests are affected or may be affected by an agency's actions. Section 120.57 provides that "[t]he provisions of this section apply in all proceedings [formal or informal] in which the substantial interests of a party are determined by *121 an agency[.]" (Emphasis added.) As pointed out by a knowledgeable commentator, in order for one to apply the appropriate access standard to administrative proceedings recognized under section 120.57, it is necessary to make "a separate examination of the provision's three essential elements: `substantial interests,' `party,' and `are determined by an agency.'" Dore, Access to Florida Administrative Proceedings, 13 Fla.St.U.L.Rev. 965, 1062 (1986).
Turning to the first element, substantial interests, Professor Dore explains, "[T]he adjective `substantial' suggests important or significant and the noun `interests' signifies something less than legally recognized and protected rights, privileges, or immunities." Id. at 1062. The latter, more restrictive language had existed under the 1961 APA in the following language: "Any party's legal rights, duties, privileges or immunities shall be determined only upon public hearing by an agency unless ... waived by the affected party... ." § 120.22, Fla. Stat. (1973). Professor Levinson, one of the principal architects of the 1974 APA, additionally comments that the adoption of the language "substantial interests" in lieu of the earlier statutory language was intended to supersede judicial decisions, such as Bay Nat'l Bank & Trust Co. v. Dickinson, 229 So.2d 302 (Fla. 1st DCA 1969). Levinson, The Florida Administrative Procedure Act: 1974 Revision and 1975 Amendments, 29 U.Miami L.Rev. 617, 628 (1975). In Bay Nat'l, this court had interpreted the predecessor act to mean that its provisions had no applicability to agency action "rendered in the performance of a quasi-executive or quasi-legislative function in which legal rights, duties, privileges, or immunities are not the subject of adjudication." Bay Nat'l, 229 So.2d at 306. Thus, in order for one now to gain access to the procedures furnished under section 120.57 of the 1974 APA, such person need not necessarily show that his or her legal rights or duties were litigated or determined in formal or informal proceedings.
Turning next to the second and third of the three essential elements of section 120.57, "party" and "determined by an agency," Professor Dore explains that one's access to an adjudicatory proceeding does not require demonstration of any impact on that particular person's personal interests, rather it is the determination of the substantial interests of a party under section 120.57 that makes the process available. Dore, supra p. 7, at 1063.
"Party" is defined under Section 120.52(11), Florida Statutes (1985).[5] Section 120.52(11)(a) establishes specifically named persons whose substantial interests are being determined in the proceeding as one category of parties. Section 120.52(11)(b) establishes two additional categories of parties. One encompasses those "who, as a matter of constitutional right, provision of statute, or provision of agency regulation" are entitled to participate as parties. (Emphasis added.) The second category includes any person "whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party." (Emphasis added.) As Professor Dore observes, the latter category overlaps and may include the first two categories. Dore, supra p. 7, at 1064. The significant difference between those accorded party status under subsection (11)(b) and those accorded such status under (11)(a) is that, unlike persons whose interests are being determined in the proceeding, the persons identified in subsection (11)(b) need not have their substantial interests determined, but need demonstrate only that their substantial interests will be affected in an *122 action in which the substantial interests of another party are determined.
In applying the above statutory provisions to the case at bar, we conclude that Phibro was made a party to the proceeding by statute, in that it was served with a written notice of a warning which specified the provision of the statute and rule alleged to have been violated and the facts alleged to constitute a violation, in accordance with the procedure delineated under Section 403.121(2)(c), Florida Statutes (1985). Moreover, both section 403.121(2)(c) and Florida Administrative Code Rule 17-103.110(1)(b) provide that a person served with a notice of violation (NOV) shall be entitled to a section 120.57 administrative hearing within twenty days following service of notice; otherwise the person's right to an administrative hearing shall be deemed waived.[6] Consequently Phibro was made a party pursuant to the above statutory and regulatory provisions once it was served with the notice. Entry of the consent orders with Conserv and Mobil did nothing to change Phibro's party status. Furthermore, Phibro's right of access to a section 120.57 hearing was not dependent upon the department's discretionary act in deciding not to include it as a party to the consent-order proceeding.
The posture of the instant case is somewhat analogous to that in Gadsden State Bank v. Lewis, 348 So.2d 343 (Fla. 1st DCA 1977), in which this court reversed an order of the Department of Banking and Finance, which had ruled that Gadsden State Bank, the owner of an existing facility near the site proposed for a branch of a competing bank applicant (Quincy State Bank), was not a party or a person substantially affected by the proceeding brought on the competing bank's application. In the opinion, this court observed that the department's rule made Gadsden a party, because it specifically recognized as parties persons who protest the granting of such applications. Additionally, in answer to the agency's argument that Gadsden's substantial interests would not be determined in the competitor's application proceeding, this court replied that "a protesting party's right of participation in an APA hearing does not depend on showing its own substantial interests are to be determined. Section 120.57 provides a hearing under one of its subsections `in all proceedings in which the substantial interests of a party are determined.' Quincy assuredly was such a party." Id. at 346.
In applying the Gadsden State Bank rule to the instant case, it is obvious that Phibro was made a party to the administrative proceeding by both statute and rule when the NOV was served on it. Having achieved status as a party pursuant to section 403.121(2)(c) and rule 17-103.110(1)(b), it is therefore immaterial whether its own interests were determined in the proceeding (the execution of the two consent orders), so long as the interests of a specific party or parties were there determined. Thus, because both Conserv and Mobil's interests were determined in the proceeding, Phibro had party status entitling it to a section 120.57 hearing regarding the effect of the consent orders.
The facts in the instant case are also somewhat similar to those stated in Florida Medical Center v. Department of Health & Rehab. Servs., 484 So.2d 1292 (Fla. 1st DCA 1986). There a health care provider submitted a certificate of need (CON) application to HRS to expand its existing facility. By final order, the application was denied and the applicant filed a *123 judicial appeal from the denial. During the pendency of the appeal, the provider submitted to HRS a second application, which was a modification of its earlier application. The second application was initially denied, and, when the applicant petitioned for a formal administrative hearing, two existing health care providers in the same service area intervened and were made parties to the proceeding. Subsequently, only the applicant and HRS  not the two intervenors  entered into a stipulation in which the applicant agreed to dismiss its appeal in exchange for HRS's agreement to license certain beds at the health care provider's facility. The intervenors thereupon filed petitions seeking hearings on HRS's decision to grant the CON to the applicant. HRS, relying upon Agrico Chem. Co., determined that the appellants were not substantially interested parties, and denied their petitions for hearings. In reversing, we made the following observations:
It is obvious that the stipulation cannot be regarded as binding on those parties that did not agree to its terms. The matters agreed upon in the stipulation were matters which neither HRS nor Bennett [the applicant] had the right to carry out in that they impinged upon the rights of existing parties ... to the proceeding that had not agreed to the proposed settlement.
Florida Medical Center, 484 So.2d at 1296 (citation omitted).
Similarly, because the agreements entered into between the department and Conserv and Mobil had the potential of affecting the substantial interests of Phibro,[7] a party which was not allowed to participate in the remedial plans set out in the consent orders, the agency erred in denying Phibro such participation. In fact, the department's decision to allow only some of the parties to participate in the consent orders is contrary to the provisions of the agency's own rule, which defines a consent order in part as "a final agency order wherein all parties and the Department, by negotiation, have arrived at a mutually acceptable resolution of alleged violations of law for the purpose of achieving full and expeditious compliance with ... [chapter] 403, ... Florida Statutes, and Department rules promulgated thereunder." Fla. Admin. Code Rule 17-103.110(3) (emphasis added.)
Regarding the department's alternative position, that Phibro alleged only economic injury and that this type of interest is not the kind that chapter 403 was designed to protect, we respond that Phibro's petition for administrative hearing alleged far more than potential economic injury. Phibro was served with a warning which informed it that the existence of pollutants exceeding permissible levels in groundwaters would constitute a violation of Section 403.161, Florida Statutes (1985), and it was specifically notified that a former owner, which it was, could be held responsible for its previous operations if such operations contributed to the present contamination at the site. Additionally, section 403.161(2) imposes liability against a violator for any damage caused and for civil penalties, and subsection (3) thereof subjects any such violator to the criminal sanction of a misdemeanor of the first degree.
Moreover, Phibro, having a substantial incentive to avoid either the imposition of, or an increase in, civil and penal sanctions, could serve the public interest, as well as its own private interests, by being allowed to participate in the consent orders by presenting evidence or information to aid the agency in making an informed decision regarding whether the remediation efforts submitted were adequate to stem the further migration of contaminated groundwater.
In concluding that Phibro was made party to the administrative proceeding by the NOV served upon it, we are not unaware *124 of the department's position that, pursuant to the broad powers conferred to it under chapter 403, it may serve a warning notice on a person who may be suspected of causing pollution without implicating such person's substantial interests. As a consequence of its broad statutory powers, notably section 403.121, describing the judicial and administrative remedies available to DER to ensure abatement of polluting conditions, and section 403.141(2), providing that liability under chapter 403 is joint and several, the department apparently concludes that the warning notice which it served on Phibro is not the equivalent of the NOV referred to in either section 403.121(c) or rule 17-103.110(1)(a), in that its final order states that it "has never filed a Notice of Violation or a civil law suit against Phibro ... for the violations addressed in the Consent Orders."
We find no authority for the department's ostensible contention that the warning served on Phibro is some type of free-form pleading which has no impact upon Phibro's substantial interests. The notice which was served generally tracked the language of section 403.121(c), specifying the statute and the regulation alleged to have been violated and the facts alleged to constitute a violation. Additionally, by entering into consent orders with two of the three persons served with the "warning," the department must have considered that Mobil and Conserv's substantial interests were affected by such service. As previously indicated, it is not the execution of a consent order which is determinative of one's access to an administrative proceeding, in that a consent order is but one of several remedies available under section 120.57 to persons who have already demonstrated that their substantial interests have been or will be affected by an agency's actions. Because the only evidence in the record which reflects the reason that Mobil and Conserv had access as parties to the consent-order proceeding related to their being served with the same warning with which Phibro was served, this evidence also provides Phibro with the vehicle by which it may establish that it too was substantially affected, so as to be entitled to access to the administrative proceeding.
We do not mean to imply that the department is not afforded discretion, by reason of its statutory powers, to enter into agreements with some of the original parties to the proceeding, rather than with all. Nevertheless, in order for it to do so we think it essential that a NOV be dismissed with prejudice against any other party who was not accorded the right to participate in the terms of the consent agreements, or that there be some kind of unconditional release from any future liability as to such party.
Finally, we reverse as well that portion of DER's final order dismissing Salomon's petition for administrative hearing on the separate ground that its petition was untimely, because, contrary to both the terms of the consent orders and rule 17-103.155(3), Salomon's petition was filed more than twenty-one days after it received notice that DER intended to enter the consent orders. The department so ruled despite the fact that Salomon was described as the corporate parent of Phibro, and despite the fact that Phibro's petition was timely filed. Under the circumstances, we fail to see how DER or any other party was prejudiced by the delay of approximately twenty-one days. Cf. R.A. Jones & Sons, Inc. v. Holman, 470 So.2d 60, 67 (Fla. 3d DCA 1985) (addition of a party is permitted if the new and former parties have an identity of interest so as not to prejudice the opponent, thereby permitting the relation back of amended pleadings), review dismissed, 482 So.2d 348 (Fla. 1986).
REVERSED and REMANDED for further proceedings.
BOOTH, J., concurs.
BARFIELD, J., dissents with written opinion.
*125 BARFIELD, Judge, dissenting:
I respectfully dissent. It appears the standing issue addressed by the Department of Environmental Regulation is solely directed to its right to settle with less than all of the parties. The effect of the majority opinion is to confer a veto right on any objecting party. I agree with the appellees' argument that all defenses and rights to be heard are preserved to appellant should the State seek to further proceed against it in the future. It may be that further action against it is barred. In the matter of settlement of the State's claims against some of the parties there is no showing of any substantial interest of appellant which will be affected by the consent order. I cannot agree that the parties have a right to be heard on matters that affect only the substantial rights of other parties.

ON MOTIONS FOR REHEARING AND REHEARING EN BANC
Appellees Conserv, Inc., and Mobil Mining and Mineral Company have moved for rehearing from this court's opinion filed January 23, 1991. Appellee, Department of Environmental Regulation (DER), moves for rehearing and rehearing en banc. DER's motion for rehearing en banc is denied. Appellees' motions for rehearing are denied in all respects except that the following portion of the opinion, unnecessary to the disposition of the case, which appeared on page 16 thereof [on page 124, supra], is deleted:
We do not mean to imply that the department is not afforded discretion, by reason of its statutory powers, to enter into agreements with some of the original parties to the proceeding, rather than with all. Nevertheless, in order for it to do so we think it essential that a NOV be dismissed with prejudice against any other party who was not accorded the right to participate in the terms of the consent agreements, or that there be some kind of unconditional release from any future liability as to such party.
Subsequent to the filings of the motions for rehearing and rehearing en banc, and while these motions were pending, the attorneys for all parties to this appeal executed a suggestion of potential mootness in which it was recited that DER, Phibro Resources Corp. and Salomon, Inc., Phibro's corporate parent, had reached a settlement which disposed of all issues raised in the appeal, and that the settlement would moot the relief granted in the opinion. Thereafter, Phibro and Salomon filed a notice of voluntary dismissal, and DER filed a request asking this court to withdraw its opinion on the ground that the parties' settlement mooted the issues addressed in this court's initial opinion.
We deny the request for withdrawal of the opinion. In so deciding we are not unaware of Florida Rule of Appellate Procedure 9.350, which provides that when any cause pending in the court is settled prior to a decision on the merits, the parties shall file a signed stipulation for dismissal. Although it is unclear whether the phrase "prior to decision on the merits" means prior to the initial decision, or a decision entered following rehearing, the Third District Court of Appeal has interpreted the rule as permitting a party to dismiss a case even during the rehearing period, thereby rendering the issue on appeal moot. Ramos v. State, 469 So.2d 145 (Fla. 3d DCA 1985), approved, 505 So.2d 418 (Fla. 1987). However, in Enterprise Leasing Co. v. Almon, 559 So.2d 214 (Fla. 1990), the supreme court, without any discussion of rule 9.350, retained jurisdiction and decided the issue before it on review even though the parties had settled and stipulated the case for dismissal before oral argument. The only reason the court gave for retaining jurisdiction was for the purpose of resolving the conflict presented.
We assume that in so acting the supreme court was following a long line of cases recognizing that an appellate court is not under a duty to dismiss an appeal because of mootness of the issues if the issues are of sufficient importance for retention of jurisdiction. See, e.g., Nichols v. Nichols, 519 So.2d 620 (Fla. 1988) (the supreme court exercised its discretion to review the issue of the standard for awarding temporary *126 attorney's fees in a marriage dissolution proceeding, notwithstanding that the issue was rendered moot because the parties had settled the case, because the issue was of general interest and importance in the administration of the law and was likely to recur); Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla. 1984) (mootness does not destroy an appellate court's jurisdiction when the questions raised are of great public importance or likely to recur); In re Byrne, 402 So.2d 383 (Fla. 1981) (despite the fact that one of the elderly petitioners had died and the other had been adjudicated incompetent, the supreme court would retain jurisdiction of an appeal from two petitions filed pursuant to Section 410.104, Florida Statutes, authorizing the Department of Health and Rehabilitative Services to take elderly persons into custody and transport them to a medical or protective service facility in an emergency situation without their consent, in that the case presented a matter of great public importance in the administration of the law), appeal dismissed sub nom. In re Turner, 455 U.S. 1009, 102 S.Ct. 1699, 72 L.Ed.2d 127 (1982); Ervin v. Capital Weekly Post, Inc., 97 So.2d 464 (Fla. 1957) (an appellate court does not lose jurisdiction of a cause even though the matter in controversy has become moot as to one or more of the litigants where the case involves wide public interest, or where such matters involve the duty and authority of public officials in the administration of the law); Harris v. Florida Real Estate Comm'n, 358 So.2d 1123 (Fla. 1st DCA) (Florida Real Estate Commission directive regarding use of trade names, which was challenged on appeal, was withdrawn by the agency during the pendency of the appeal, yet the issue was still decided because of its importance), cert. denied, 365 So.2d 711 (Fla. 1978).
In our judgment the issues decided in this court's opinion are of sufficient importance to call for the retention of jurisdiction by this court. Because this case involves the duty and authority of public officials in the administration of the law, and is a matter which is likely to recur in the absence of the decision, we consider that it is an issue which requires retention of jurisdiction. The request for withdrawal of this court's opinion is therefore denied.
BOOTH, J., concurs.
BARFIELD, J., dissents with written opinion.
BARFIELD, Judge, dissenting.
I respectfully dissent.
The majority reaches its conclusion that Phibro and Salomon are entitled to a section 120.57 hearing on the consent orders on its conclusion, apparently as a matter of law, that the warning notice sent by DER constituted a notice of violation because it referenced what could be the appellants' potential exposure should action be initiated by DER. I disagree with the majority on this point, and I am further confused by its reference to the entry of consent orders as buttressing the conclusion that a notice of violation had to have issued thus implicating substantial interests of all warned parties.
If this court is to construe the warning notice as a notice of violation under the limited facts of this case, then the effect of this court's decision should not have implications for any other proceeding involving like matters. All parties to this appeal have filed a Motion for Voluntary Dismissal setting forth that their differences have been settled. It is my position that once litigants have settled their differences there is no reason for the court to intervene, and there is no issue for the court to adjudicate. Although some courts, the Florida Supreme Court among them, choose to publish opinions believed to be of importance by the court although the opinion decides no controversy, we should not encourage that practice. Law reviews, journals, and other treatises are designed for that purpose. This is especially true where the interpretation of the facts controls the disposition of the case.
Inasmuch as the statute specifically permits DER to settle matters with less than all parties, I am convinced that the substantial interest of nonsettling parties are not implicated. All rights and defenses of *127 nonsettling parties are preserved to them in the event of future action by DER. DER's remedies may be barred, limited or not affected by its settlements. Those matters are to be determined in a subsequent proceeding.
In my judgment this appeal should be dismissed as moot.
NOTES
[1] § 120.57, Fla. Stat. (1985).
[2] This warning was apparently issued in compliance with Section 403.141(2), Florida Statutes (1985), providing that "[w]henever two or more persons pollute the ... waters of the state in violation of this chapter ... so that the damage is indivisible, each violator shall be jointly and severally liable for such damage... ." If, however, "said damage is divisible and may be attributed to a particular violator ..., each violator is liable only for that damage attributable to his violation."
[3] Village Park Mobile Home Ass'n, Inc. v. Department of Business Reg., Div. of Fla. Land Sales, Condominiums & Mobile Homes, 506 So.2d 426 (Fla. 1st DCA), review denied, 513 So.2d 1063 (Fla. 1987); Agrico Chem. Co.
[4] Florida Soc'y of Ophthalmology v. State Bd. of Optometry, 532 So.2d 1279 (Fla. 1st DCA 1988); Department of Health & Rehab. Servs. v. Alice P., 367 So.2d 1045 (Fla. 1st DCA 1979); Florida Dep't of Offender Rehab. v. Jerry, 353 So.2d 1230 (Fla. 1st DCA), cert. denied, 359 So.2d 1215 (Fla. 1978).
[5] Section 120.52(11) provides, in part, as follows:

"Party" means:
(a) Specifically named persons whose substantial interests are being determined in the proceeding.
(b) Any other person who, as a matter of constitutional right, provision of statute, or provision of agency regulation, is entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party.
* * *
[6] Although nothing appears in the record below showing whether Phibro or indeed Mobil or Conserv requested a section 120.57 administrative hearing within twenty days following service of notice, this fact does not militate against the party status Phibro achieved after having been served with the NOV. The record also does not show whether the warning served on Phibro contained an admonition that its failure to request a hearing within twenty days after service would constitute a waiver of such right. Consequently, it cannot be said that Phibro waived a clear point of entry into an administrative proceeding. Nevertheless, the department does not rely upon the twenty-day waiver provision provided by either section 403.121(2)(c) or rule 17-103.110(1)(b), but contends only that Phibro lacked standing to seek an administrative hearing on the ground that its substantial interests were not affected by the consent orders.
[7] This is so because the two consent orders did not terminate the administrative proceeding, initiated by service of the NOV against Phibro. In fact, the department's final order recognizes that the department may at sometime in the future pursue an enforcement action against Phibro, at which time Phibro could then raise all of its available defenses. Thus, the effect of the consent orders, insofar as Phibro's interests were concerned, was simply to abate or suspend the proceeding against it, rather than terminate it.