JORGENSON, Judge.
The Department of Environmental Regulation [DER] appeals from an order denying a temporary injunction. For the following reasons, we reverse.
Marieta Kaszyk is the owner of two trailer parks located in the Florida Keys. In 1988, DER informed her that the sewage treatment plants at the parks were not in compliance with state statutes and regulations regarding effluent standards.[1] DER also apprised the owner of the potential monetary penalties she faced for such violations. The owner agreed to bring the plants up to standards and to settle the matter by entering into consent orders with DER. Approximately eight months later, after various drafts had travelled between the parties, the owner signed two consent orders. In those orders, the owner agreed to undertake specific corrective measures at the plants, including the construction of injection wells and the repair of collection *1011 systems. She explicitly waived the right to a formal administrative hearing or appeal.[2]
After signing the consent orders in September, 1988, the owner discovered that she could not afford to implement the changes to which she had agreed. In light of the plants’ continued operation for over two years in violation of state standards and the consent orders, DER sued in Monroe County Circuit Court in December, 1990, to enforce the consent orders and, pursuant to section 403.131, Florida Statutes (1989), to enjoin further violations of effluent standards.[3] DER further alleged that the Coconut Grove plant was being operated without the required permit. DER sought a temporary injunction to require the owner immediately to stop discharging improperly treated sewage from the treatment plants into Boca Chica Bay and to prohibit her from operating the Coconut Grove plant without a state permit.[4] The trial court denied DER’s motion for a temporary injunction and declared the consent orders void because of DER’s “inequitable conduct” in obtaining those orders.[5]
The trial court abused its discretion in denying the motion for a temporary injunction. DER established that samples taken from the treatment plants revealed violations of effluent standards; that the Coconut Grove plant was being operated without the necessary permit from DER; that irreparable harm would flow from continued effluent violations at the plants; that it lacked an adequate remedy at law; that it had a clear legal right to the relief requested; and that the injunction was in the public interest. See Wilson v. Sandstrom, 317 So.2d 732 (Fla.1975), cert. denied, 423 U.S. 1053, 96 S.Ct. 782, 46 L.Ed.2d 642 (1976).

Irreparable Harm

When the express purpose of a statute is to protect the public health, safety, and welfare, and when the legislature has specifically empowered an agency to seek an injunction against one who violates that statute, irreparable harm is presumed. Harvey v. Wittenberg, 384 So.2d 940, 941 (Fla.3d DCA 1980). The statutes and regulations that DER sought to enforce to prevent further discharge of improperly treated sewage into Boca Chica Bay were clearly designed to protect the public health and safety and to preserve the pristine waters of the Florida Keys. § 403.021, Fla.Stat. Moreover, DER demonstrated that although the owner attempted to remedy the violations the plants continue their substandard operation. Irreparable harm, although presumed, was also clearly established; entry of an injunction is in the public interest. See Harvey v. Wittenberg, 384 So.2d at 941.

*1012
No Adequate Remedy at Law

The very nature of the violations alleged and testified to in the trial court demonstrate that DER had no remedy at law that would adequately address the harm being done to the environment. Recognizing that such environmental damage is not entirely compensable, the legislature gave DER “independent and cumulative” remedies of in-junctive relief and penalties. § 403.131, Fla.Stat.

Clear Legal Right to Relief Requested

At the hearing on its motion for a temporary injunction, DER demonstrated through competent evidence that the owner was violating effluent standards by discharging improperly treated sewage into Boca Chica Bay, and that one of the plants was being operated without the required state permit. Because these activities violated state statutes and agency regulations, DER had a clear legal right to the injunction. Moreover, issuing the injunction is in the public interest, as the statutes and regulations that DER seeks to enforce are designed to protect the public health and welfare. § 403.021, Fla.Stat.
None of the defenses put forth by the owner were sufficient to defeat DER’s right to a temporary injunction. DER need not demonstrate that the owner have knowledge of the release of improperly treated wastewater before obtaining in-junctive relief. § 403.161, Fla.Stat.; Fla.Admin.Code Rule 17-600.740(2)(a). Furthermore, the statutory ■ scheme of Chapter 403 does not allow an owner to be excused from compliance based upon good faith efforts to remedy violations; such mitigation is simply applicable as a partial defense to the assessment of monetary damages. § 403.121(l)(b), Fla.Stat.
The legislature has afforded DER the option of bringing either administrative or judicial proceedings against an alleged polluter to enforce compliance with water treatment standards and recover damages or penalties for damage to the environment. §§ 403.121 and 403.131, Fla.Stat.; § 403.121(l)(c), Fla.Stat. (“It shall not be a defense to, or ground for dismissal of, these judicial remedies for damages and civil penalties that the department has failed to exhaust its administrative remedies, has failed to serve a notice of violation, or has failed to hold an administrative hearing prior to the institution of a civil action”); § 403.131, Fla.Stat. (“All the judicial and administrative remedies in this section and § 403.121 are independent and cumulative except that the judicial and administrative remedies to recover damages are alternative and mutually exclusive.”) In this case, DER sought to end the pollution by arriving at a settlement with the owner without commencing administrative proceedings. Because we hold that DER was entitled to a temporary injunction independent of the consent orders, we do not decide the validity of those orders. However, we see no evidence of inequitable conduct by DER. The department appropriately advised the owner to seek legal counsel to review the various drafts of the consent orders that were exchanged throughout the eight-month negotiations; her failure to obtain counsel during that time is not attributable to DER.
In sum, we hold that DER was entitled to a temporary injunction prohibiting the owner from continuing to violate state effluent standards, as section 403.131 grants DER the authority to seek such relief to prevent irreparable injury and because there was substantial competent evidence presented that the plants were operating in violation of state statutes and regulations.
Reversed and remanded for further proceedings.

. The plants were discharging excessive chlorine and improperly treated sewage into Boca Chica Bay.

. Paragraph 15 of the Coconut Grove Trailer Park consent order and paragraph 22 of the Waters Edge Colony consent order provide: "Respondent waives its right to an administrative hearing on the terms of this Consent Order under section 120.57, F.S., and its right to appeal this Consent Order pursuant to Section 120.68, F.S.”

. DER also asked the trial court to impose civil penalties against the owner.

. Boca Chica Bay has been designated an "Outstanding Florida Water” and is thus entitled to the highest degree of protection. Fla.Admin.Code Rules 17-302.700(1), 17-302.700(9)(i).

. In denying the motion for a temporary injunction, the trial court relied on Phibro Resources Corp. v. Department of Environmental Regulation, 579 So.2d 118 (Fla. 1st DCA 1991). That reliance was misplaced. In Phibro, the first district held that the Department erred in denying Phibro, an alleged violator, an administrative hearing under Chapter 120, Florida Statutes, after the department had entered into consent orders with two other parties who were the prior and subsequent owners of the polluting facility. The court held that Phibro, as a former owner, could be partially responsible for the pollution if its actions had contributed to the damage, and that its "substantial interests” as defined by section 120.57 had been affected by the agency action. Phibro had been afforded access to the initial administrative proceedings by being served, along with the other violators, with a Notice of Violation. DER’s successful negotiations with the other owners did not defeat Phibro's procedural rights as a party. Phibro, 579 So.2d at 122. In this case, the record is clear that DER never commenced administrative proceedings but chose to negotiate the consent orders to end the pollution and only sought judicial action after the violations had continued for two years after the ostensible settlement.