**Gregory D. McCLUNEY, Plaintiff,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendant.**

**No. 97–48–CIV–T–17.**

United States District Court, M.D. Florida, Tampa Division.

March 26, 1998.

William Francis Rutger, Rutger & Donaldson, Palm Harbor, FL, for Gregory D. McCluney, plaintiff.

Timon V. Sullivan, Kelly Kathleen Griffin, Gunn, Ogden & Sullivan, P.A., Tampa, FL, for General American Life Insurance Company, defendant.

---

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH Chief Judge.

The cause is before the Court on defendant, General American Life Insurance Company (General's), motion for summary judgment, filed January 5, 1998, with memorandum and documentation in support thereof (Docket Nos. 18, 20–21 and 25), and response thereto, filed January 26, 1998 (Docket No. 26).

## BACKGROUND

This case commenced with the filing of a complaint in state court. The complaint alleged that the plaintiff was insured for disability by the defendant, and, further, that the plaintiff became totally disabled under the terms of the policy. Despite making claims, the plaintiff asserted that the defendant wrongfully denied the plaintiff disability insurance benefits and waiver of premium benefits, constituting a breach of contract. After the filing of the complaint in state court, the defendant removed the cause of action to this court, on January 9, 1997, on the basis of diversity jurisdiction.

## FACTS

The following facts are submitted by the parties, in support and/or in opposition to, the motion for summary judgment. The Court recognizes these as "facts" only in regard to resolution of the pending motion.

1. The insurance policy which is the basis for this action was issued to the plaintiff and became effective on September 30, 1996, Policy No. 008416368. (Ex. A to motion)

2. The policy provides that the maximum benefit for total disability, injury or sickness is $3,900.00 beginning "on the 91st day of a period of total disability and continuing until the end of the maximum benefit period."

3. The policy provides that "Total Disability and Totally Disabled" mean:

[T]hat, as a result of Sickness or Injury or a combination of both, **you are unable to perform the material and substantial duties of any occupation in which you reasonably may be expected to engage because of education, training or experience,** with due regard for your occupation and earnings at the start of your Disability. You must be under the regular care and attendance of a Physician, other than yourself, unless you furnish proof satisfactory to us that future or continued care would be of no benefit to you. (emphasis added) (Ex. A to motion, pg. 3.01)

4. On or about January 8, 1996,[1] the plaintiff filed a Proof of Claim form (Ex. B to motion),wherein he asserted that he had been injured on July 4, 1994, when he fell while jogging and injured his left foot and back, and, that he was first treated for the injury on July 20, 1994. Plaintiff further asserted that he had been unable to work (unable to perform any work or business) from September 18, 1995, to that date.

5. An Attending Physician's Statement was filed by Dr. Gilson Webb on January 12, 1995, in support of the plaintiffs claim of disability (Ex. C to motion). The statement gave a primary diagnosis of "sciatica" with "Depression 2nd to pain & physical limitations." The doctor further stated that the plaintiff "cannot engage in any occupation where he must walk, stand or travel or concentrate long periods of time" and stated that the plaintiff had been unable to do so since September–October 1995.

6. The plaintiff submitted an Occupational Description form in support of the disability claim (Ex. D to motion). The following information was set forth by the plaintiff therein:

---

1. The Court notes that the form is actually dated 1–8–95, but that is apparently a misprint. The plaintiff does not contest that the actual date is 1996.

| | |
|---|---|
| Number of Hours Worked: | 50+ |
| Occupational Title | Incentive Travel/Marketing Consultant |
| Annual Income Prior to Disability | $92,636.00 |
| Education | B.S., language arts/journalism |
| Duties of Occupation (in order of importance) | |

a. prospect and find, travel domestic and international travel/marketing customers to place and sell programs, gather information for presentations and consulting opportunities–20–25 hours a week

b. create presentations, network displays to meet with above prospects and customers and plan their travel incentive, marketing, and presentational needs–10–15 hours a week

c. schedule presentations; work trade shows/conventions for for clients marketing needs; hold seminars, sale/incentive meetings to implement promotion of programs in U.S., Asia, Caribbean, Europe and Canada–15–20 hours a week

d. travel to/meet with customers/clients to follow-up, service and evaluate the customer/employee incentives, marketing and advertising programs. Function as travel/sales promotion group leader-domestic and international. Coordinate all travel functions

The plaintiff listed the following as the ways in which the "disability" had interfered with the performance of his job: 1) inability to travel, make customer calls and presentations; 2) inability to travel to service clients, seminars and conventions; 3) inability to travel to make business calls; 4) cannot conduct seminars, trade shows, and/or presentations requiring 15 hours a day on your feet to do business; and 5) cannot function as tour/group leader on incentive trips, handle luggage, hotels and air/bus, etc., equipment and displays.

7. During the investigation of the claim, the plaintiff received benefits from the defendant. However, on May 20, 1996, the defendant sent the plaintiff a letter (Ex. E to motion), which stated in relevant part:

Our Orthopedic Consultant has reviewed all of the medical information currently in your claim file. Reports reviewed from Dr. Boyer, Dr. Hayter and Dr. Shield do not indicate any objective findings and find examinations within normal limits. Therefore, from an orthopedic standpoint, it does not appear that you have an impairment which would preclude your (sic) from working.

Our psychiatric consultant has reviewed the information provided by Dr. Gilson Webb. She also had a telephone conversation with Dr. Webb on May 15, 1996. Dr. Webb has indicated that your depression has improved and that he does not feel that your depression would preclude you from working.

Based upon the above, it would not appear that you are medically or psychiatrically impaired at this time. While we have provided payment thru (sic) May 15, 1996, the date of our phone conversation with Dr. Webb, we are unable to consider your claim for further disability benefits.

8. After further investigation due to the appeal of the plaintiff, the defendant by letter of September 13, 1996, (Ex. F to motion) again declined the claim for disability benefits, stating in relevant part:

In our consultant's telephone conversation with Dr. Webb on May 15, 1996, Dr. Webb informed our consultant that your depression would not preclude you from working. In follow-up to their conversation, our consultant faxed a typed synopsis of this discussion to Dr. Webb for his verification and/or comments. On June 11, 1996 Dr. Webb wrote us a letter stating "In a recent phone conversation I indicated to you that Mr. Gregory McCluney's depression had improved and that if this was his only impairment he might be able to do certain kinds of work. As I understand it, his

physical condition has not yet been clarified, in part because he does not have the funds for an MRI." In the third and fourth paragraph (sic) of this letter, Dr. Webb informs us that both he and Dr. Hodan feel it is important that your physical impairment be clarified since this is primary to your difficulty working. Consequently, this letter informs us that you are capable of performing work and that any psychiatric condition you may suffer from is secondary to your physical complaints, which remain unsupported.

... Our medical department has reviewed records from Dr. Raveling, Dr. Shields, Dr. Boyer, Dr. Hayter, and Dr. Webb and found that these records do not support restrictions from your occupation as no report contains a specific diagnosis and there are no objective physical findings to support your claim.

You have indicated that your claim for benefits was approved only for depression. However, this statement is not completely accurate as each of your physicians has indicated that any psychiatric symptoms that you may be experiencing are a result of your physical condition. Consequently, without such a physical condition there are no psychiatric impairments precluding you from working. As of this writing, we have yet to receive any objective evidence to support your physical complaints and it would appear that we are being asked to continue to provide benefits based solely upon your subjective complaints. Unfortunately, we remain unable to justify such action.

The plaintiff asserts that the letter quoted does not accurately reflect Dr. Webb's position and has attached a letter from Dr. Webb, dated June 11, 1996, to the response to the motion. The letter confirms that the plaintiff's depression has improved and urges clarification of the plaintiffs physical condition. (Ex. B response to motion). The Court has considered this letter in resolution of the pending motion.

9. In December 1996, the case commenced in state court, where the plaintiff alleged he was insured for disability by the defendant, and, that he became totally disabled under the terms of the policy. Further, the plaintiff asserted wrongful denial of disability insurance benefits and waiver of premium benefits, constituting a breach of contract.

10. The plaintiff's deposition was taken on August 14, 1997 (Docket No. 18 and Ex. H to motion). The following relevant testimony was given at that time:

a. The plaintiff has a college education having received a B.S in education in 1969 (Transcript (Tr.) pg. 8)

b. Prior to the complained of injury, the plaintiff owned, and, in fact, still owns, as a sole proprietorship, McCluney and Associates (the business), a consulting business which sells incentive travel programs, offers promotional services, and does some placement for travel (Tr. pgs.39–41). Additionally, the plaintiff did, and does, some free lance writing, which does not provide him with any significant amount of income (Tr. pg.40). The plaintiff's gross receipts or sales for the business in 1994, as listed on his tax return, was $92,636.00 (Tr. pg. 94 and Ex. O to motion)

c. The plaintiff's business consisted, and consists, of prospecting, finding travel, domestic and international; travel marketing to customers to place and sell programs; gathering information for presentations; consulting opportunities; attending trade shows, dinners and meetings, setting up and tearing down exhibits at shows, loading trucks; and loading and moving luggage (Tr. pgs. 63–64 and 58). The plaintiff traveled approximately 200,000 miles in an average year prior to the accident (Tr. pgs.54–56).

d. The plaintiff, on a personal basis, walked and/or jogged to help maintain his blood pressure; enjoyed music, movies, reading, long car rides, and fishing (Tr. pgs.82–83).

e. On or about July 4, 1994, the plaintiff went jogging, "took a spill" and at some point in time afterwards began experiencing problems with his left foot and back (Tr. pgs.125–126).

f. The plaintiff lists the following health care professional who have and/or are treating him and the basis for that treatment:

i. Dr. David Lubin is plaintiff's primary physician who has been treating him for

the on-going problems associated with high blood pressure (medications: Tenormin, Gulatacene, Aytrin, and Atenolol) for ten years, as well as, colds, sore throats, his foot and his back. Dr. Lubin prescribed anti-inflammatory medication for the foot and sent the plaintiff for an MRI and nerve conduction study (Tr. pgs. 4–5 and 17–20).

ii. Dr. Gilson Webb is a psychiatrist, who the plaintiff has been seeing since approximately November of 1995 and, in fact, was still seeing at the time of the deposition. He went to Dr. Webb due to "life problems", including money pressures, marital pressures, inability to work conventions and make trips, and his physical situation, his foot and back had been bothering him for about one (1) year and it had "begun to affect his work." Dr. Webb prescribed anti-depressants (Zoloft and Amitriptyline) but they have significant side effects, including sleeplessness, radical dreams, extreme tiredness, and lack of concentration. The plaintiff says Dr. Webb told him the depression was brought on by his "life situation" (Tr. pgs. 5, 20, 33–34, 54–56, and 80).

iii. Dr. Raveling is a chiropractor who has been treating the plaintiff for foot, left ankle, and lower back pain since in or about August 1994. The plaintiff asserts that Dr. Raveling recommended he change professions and, further, he referred the plaintiff to a neurologist (Tr. pgs. 23, 118, and 133).

iv. Dr. Karp is a neurologist and the plaintiff went to him, at Dr. Raveling's suggestion, to see if he had a nerve problem. Dr. Karp reports a "slight weakness" in the evertors of the left foot causing a slight drag, but further reports that the plaintiff can walk without a cane. Dr. Karp states that the plaintiff has "evidence of involvement of the superficial peroneal nerve." He recommended a nerve conduction study, which was done by Dr. Vollbracht, but it failed to identify any specific problem. Dr. Karp recommended that the plaintiff look into a brace. He also recommended that the plaintiff restructure his life and work (Tr. pgs. 118–122 and 127 and Ex. D to response to motion).

v. Dr. Fleeter is a podiatrist who the plaintiff went to, at Dr. Karp's suggestion, to be fitted for a brace for his left foot (Tr. pg.14).

vi. The plaintiff has been seen by two orthopedic surgeons, Dr. Hayter and Dr. Shields. He saw Dr. Hayter two or three times, including a foot examination. Then he was sent to Dr. Shields, who took x-rays, prescribed medication, suggested an MRI, told him to move around and change positions and prescribed a physical therapy regime to be done by the plaintiff at home. The x-rays of the foot, lower back and ankle revealed no broken bones. An MRI on the lower back, January 1997, found nothing. The plaintiff, at the time of the deposition was no longer seeing Dr. Shields, but he was continuing to use the recommended physical therapy regime (Tr. pgs. 28–31 and 128).

vii. The plaintiff also saw a Dr. Boyer who told him to cut way back on travel, however, he had given him the same advice years before due to the stress level and effect on his blood pressure (Tr. pgs.128–129).

g. The plaintiff has moved to Atlanta but is continuing to see the local doctors listed above because it is such a big deal to change doctors (Tr. pg.25).

h. As to the basis for his claim of disability, the plaintiff says the following: Although, his business is still viable in theory he is not able to do the things necessary to make as much money as he did prior to the accident. The plaintiff asserts that the following hinder him in his occupation: he can't travel, when he sits too long he goes numb and then when he puts pressure on his foot it collapses or is painful; he can't unload and set up exhibits; he can't carry luggage, it compounds the problems he has; and he can't do trade shows or conventions because he can't stand on his feet more than about forty-five (45) minutes then need to elevate them (Tr. pgs. 38, 41, 56, and 65–67).

i. One major component of the plaintiff's claim for disability seems to be his conclusion that he is no longer able to travel. The plaintiff repeats that theme often in the deposition and claim form. However, even though he no longer travels 200,000 or miles a year, the plaintiff testified that he still travels approximately 30,000 miles in a year. He travels both for business and personal reasons. In traveling now, he has made some adjustments like using carts or porters and bellmen to carry his luggage, using car rental agencies that are in the airport, trying to take direct flights where possible, and taking regular rest stops. In fact, the plaintiff admitted to taking the following trips, all but one by airplane; the list may not be all inclusive:

1) January 1996–Hawaii, an tenth anniversary gift to his wife;

2) May 1996–Kansas City, Missouri-business;

3) July 1996–Tulsa, Oklahoma, funeral, and San Francisco and Santa Rosa, California;

4) August 1996–Kansas, for corporate trip with wife;

5) September 1996–Houston, Texas, wife's job interview, and Boulder, Colorado, client's wedding;

6) October 1996–Montana–client's fishing trip;

7) December 1996–Kansas City and Ohio, family trip;

8) January 1997–Highlands, North Carolina (by car), family trip;

9) February 1997–Kansas City; and

10) Gulfport, Mississippi, family trip (Tr. pgs. 54–56, 69–70 and 107–114).

j. The plaintiff asserts that he still operates his business from his home, being there four to six hours a day, but complains that he is not making much money. However, he concedes that he can still create presentations, art work and displays; he can write letters, talk on the phone, and meet with clients, but feels some restriction getting to remote clients. Moreover the plaintiff can still prospect for business (Tr. pgs. 71–73, 84, and 86–87).

k. The plaintiff has sent out a few resumes and spends some of his time looking for work, i.e. advertising, publishing and writing (Tr. pgs. 86–87 and 92).

l. In or about October or November of 1995, the plaintiff applied for Social Security disability but his claim was declined in or about May 1996 (T. pgs. 97 and 106).

m. The plaintiff claimed gross receipts or sales of $65,101.00 on his 1995 tax return and gross receipts and sales of $93,831.00 on his 1996 tax return, which may or may not have been based on previously done work (Tr. pgs. 97, 99, and 102 and Ex. O to motion).

## STANDARD OF REVIEW

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party, *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.' " *Celotex Corp.*, at p. 274. As the

district court in *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808 (N.D.Tex.1994), summarized:

> Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," ... the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment ... The existence of a mere scintilla of evidence will not suffice ... (cites omitted) at 810–811.

Issues of fact are "genuine only if a *reasonable* jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added). The Court must "draw inferences from the evidence in the light most favorable to the non-movant and resolve all *reasonable* doubts in that party's favor." *Specialty Malls of Tampa v. City of Tampa,* 916 F.Supp. 1222 (M.D.Fla.1996). (emphasis added) A court is not required to allow a case to go to trial "when the inferences that are drawn from the evidence, and upon which the non-movant relies are 'implausible.' " *Mize v. Jefferson City Board of Education,* 93 F.3d 739, 743 (11th Cir.1996).

### DISCUSSION

■ Based on the above recited fact scenario, the defendant comes before the Court seeking a determination that it is entitled to summary judgment on the breach of contract claim because: the plaintiff is not totally disabled, despite his assertion that he is unable to travel, because he continues to travel regularly; the plaintiff is not totally disabled because he continues to engage in an occupation for which he is reasonably suited; and the plaintiff is not totally disabled because he has the ability to engage in other gainful employment. The plaintiff opposes the motion and asserts that the defendant has failed to carry its burden to affirmatively prove that total disability has ceased which he

claims the defendant must do based on its initial payment of benefits to the plaintiff.

The Court has carefully considered this case and concludes that the defendant's position is well-taken, even assuming that the plaintiff's position is correct and the defendant has an affirmative burden to prove that his "total disability" has ceased. The Court cannot find that there are genuine issues of fact upon with a "reasonable" jury could find in favor of the plaintiff.

■ This is a breach of contract case, therefore, the court has the duty to determine as a matter of law the legal effect and interpretation of the provision herein at issue, "Total Disability and Totally Disabled." Where there is no ambiguity, the court simply applies the plain meaning of the contract language, giving due consideration to the rules of construction. 11 *Fla.Jur.2d* Contracts § 139, *et seq.* The insurance contract here provides for disability when the insured is "unable to perform the material and substantial duties of any occupation in which you reasonably may be expected to engage because of education, training or experience, with due regard for your occupation and earnings at the start of your Disability." The Court finds this section to be unambiguous and now must apply the facts of this case and determine if there are any disputed issues which would preclude granting the requested summary judgment.

Clearly, the plaintiff has failed to establish that there are any genuine issues material of fact as to his ability to perform the duties of "any" occupation, as required by the contract. In fact, the plaintiff's own testimony establishes that he is now, and has been continuously, engaged in the same occupation before and after his injury; he is the sole proprietor of McCluney and Associates. He continues to perform the duties of that employment. He continues to travel, for both business and pleasure, despite his conclusory statement that he is restricted in his traveling. The plaintiff has not come forward with any specific evidence that his business has lost money due to his alleged disability; he merely concludes that it is losing money and that the income the business has claimed in its tax returns, $65,101.00 in 1995 and $93,-

831.00 in 1996, was based on work done prior to his injury. There are no doctor's statements that would establish that the plaintiff is unable to engage in any occupation. In fact, there is little or no objective evidence that the plaintiff is suffering from any debilitating circumstance. The plaintiff testified that various doctors suggested he might consider restructuring his life but not that any one physician has declared him to be totally disabled. The plaintiff asks this Court to rely on his subjective, self-serving evaluation of his condition to declare that he is disabled.

The defendant has set forth enough information to conclude that, if he ever was disabled, the plaintiff is not now totally disabled within the meaning of the insurance contract at issue. The plaintiff has failed by competent evidence to refute that conclusion, in fact, the plaintiff's own deposition strongly supports the defendant's assertions. The Court therefore adopts the position of the defendant. Accordingly, it is

**ORDERED** that the motion for summary judgment (Docket No. 18) be **granted** and the Clerk of Court be directed to enter judgment for the defendant and dismiss this cause of action.