**SPECIALTY MALLS OF TAMPA,**
et al., Plaintiffs,

v.

**The CITY OF TAMPA, FLORIDA,**
et al., Defendants.

No. 94–1406–CIV–T–24(E).

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 5, 1996.

Luke Charles Lirot, Lirot Dolan, P.A., Tampa, FL, for Specialty Malls of Tampa, Inc., Joe Redner.

Michael S. Hooker, Glenn, Rasmussen & Fogarty, Tampa, FL, for City of Tampa, City Council of the City of Tampa, Florida, Scott Paine, Ronnie Mason, Eddie Caballero, Joe Greco, Linda Saul–Sena, Perry Harvey, Rudy Fernandez, Gloria Moreda.

## *ORDER*

BUCKLEW, District Judge.

This cause comes before the Court for consideration of Defendants' Motion for Summary Judgment (Doc. No. 25, filed June 30, 1995). Plaintiffs filed a Response in Opposition[1] (Doc. No. 32, filed July 20, 1995). Both parties filed supplemental memoranda on the summary judgment issues (Doc. Nos. 37 & 45).

Many of the issues raised by the summary judgment motion were previously considered by this Court in an Order on Plaintiffs' Motion for Preliminary Injunction[2] (Doc. No. 15).

### I. *Findings of Fact*

Plaintiff Redner located a parcel of property near the intersection of North Dale Mabry Highway and West Columbus Drive in the City of Tampa that he intended to utilize, in part, for the establishment of a business specializing in the presentation of exotic dance performances, as well as other businesses.

Plaintiffs sent a written request to the Zoning Coordinator for an interpretation of the ability of the subject property to comply with city zoning requirements for the establishment of a special cabaret/adult use and to ascertain whether or not the City would seek to enforce a prior ordinance that was declared invalid by the Circuit Court for Hillsborough County. In response, the Zoning Coordinator wrote a letter dated June 28, 1990 in which she advised the Plaintiffs' counsel that Section 43A–197 *Adult Use* establishes locational criteria that requires a 500–foot separation from any "residential" or "office" districts and a 1000–foot separation from another adult use. She further advised that the subject property is located 380 feet North of property zoned OP–1, which is defined as an "office district." Therefore, the subject property was not a permissible location for an adult use.

The Assistant City Attorney also wrote a letter dated June 29, 1990 in which he represented that the City disagreed with the court's opinion invalidating the adult use provisions, that the City intended to continue to enforce those provisions and that the City intended to readopt those provisions.

The City readopted its zoning code by Ordinance 90–203 on August 2, 1990 after correcting the due process problems that resulted in the judicial invalidation of Ordinance 8482–A.

The property directly to the East (occupied by Jerry Ulm Dodge, Inc.) and the property to the West (occupied by Southeast–Atlantic Corporation) of the subject property are both zoned Planned Development districts (PD) (approved for the development at an undetermined point in the future for intensive commercial zoning uses, including office use). PD districts, at the time the letter was written, were not defined

1. The Court notes that Plaintiffs' Response in Opposition (Doc. No. 32) and Memorandum of Law in Support of their Response (Doc. No. 33) are void of any meaningful citation to caselaw supporting their arguments.

2. Plaintiffs sought to enjoin Defendants from applying the Ordinance against the Plaintiffs. Plaintiffs' Motion for Preliminary Injunction was denied.

as "residential" or "office" districts for purposes of the 500–foot setback requirement.

On March 30, 1994, the Plaintiffs entered into a contract for purchase of the subject property for $1.3 million with the specific intent of establishing an adult use on the northern parcel of the property and dividing off the southern parcel of 120 feet to satisfy the 500–foot setback requirement.

On May 20, 1994, the Zoning Coordinator personally informed Plaintiffs' counsel that a text amendment had been filed with the City by the attorneys for both Jerry Ulm Dodge, Inc. and Southeast–Atlantic Corporation that would include PD zoning districts as "office" or "residential" districts for the purposes of adult use preclusion, as specifically defined in the zoning district definitions of the Code. On May 23, 1994, the Plaintiffs closed on the subject property. Also on May 23, 1994, the Zoning Coordinator sent a letter to Plaintiffs' counsel indicating that Jerry Ulm Dodge, Inc. and Southeast–Atlantic Corporation had initiated a text amendment to Chapter 27 of the City of Tampa Code.

On May 26, 1994, the text amendment was the subject of the first official city action; the City set public hearings for June 16, 1994 and June 30, 1994.

On June 7, 1994, the Plaintiffs sold the southern portion of the property to Production Equipment of Tampa, Inc. On June 15, 1994, Plaintiffs filed an application for an S–1 Special Use.

On June 16, 1994, the first of two public hearings was held in front of the City Council to discuss the proposed text amendment of adding PD and PD–A zoning districts to the list of zoning districts that would include the preclusive setback restrictions of the City's adult use legislation.

On June 29, 1994, the Zoning Coordinator issued a letter identifying various grounds upon which the Plaintiffs' original site plan failed to meet the general standards and specific criteria for the special use application. The concerns included a discrepancy in the legal description, required parking, loading and unloading requirements, access to a "right of way" and various additional objections and comments. Also on June 29, 1994,

Plaintiffs submitted a revised site plan that corrected the legal description discrepancy.

On June 30, 1994, the Zoning Coordinator, after review of the revised site plan, again denied the S–1 Application based on the fact that only the legal description discrepancy was corrected. Also on June 30, 1994, the second public hearing on the adoption of the specified text amendment was held before City Council. At the conclusion of the public hearing, the City Council unanimously voted to adopt the zoning text amendment.

The Plaintiffs filed a complaint asserting the following claims: 1) the Ordinance is unconstitutional and is barred by the doctrine of equitable estoppel; 2) the Ordinance takes property without due process of law resulting in inverse condemnation; 3) the Ordinance constitutes an unlawful bill of attainder; 4) there was an improper predicate for the adoption of the Ordinance; 5) the Ordinance does not allow for the legitimate establishment of "alternative avenues of communications"; 6) the Ordinance lacks adequate procedural safeguards and has no provision for constitutionally prompt judicial review thereby constituting a prior restraint; and 7) the Ordinance violates the Equal Protection Clause.

The Defendants move this Court for summary judgment on the following grounds: 1) the Plaintiffs lack standing to assert their claims; and 2) even if the Plaintiffs enjoy standing, the Defendants are entitled to summary judgment as to each claim based on the merits.

## II. *Conclusions of Law*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604

(11th Cir.1991). When the party moving for the summary judgment does not bear the burden of persuasion on the issue at trial, the moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

■ In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988) (citations omitted).

■ Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of mate-rial fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

### a. Standing

■ The Court must first address the issue of the Plaintiffs' standing. Article III of the United States Constitution restricts federal courts to resolving "cases" or "controversies." To assure that federal courts adhere to this restriction, a litigant must have standing to assert a claim in federal court. *See FDIC v. Morley,* 867 F.2d 1381, 1386 (11th Cir.1989).

■ The Supreme Court's framework for resolving standing disputes contains two components: (1) the "irreducible" constitutional requirements, and (2) prudential considerations. *Id.* (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). A litigant must establish three elements to satisfy the "irreducible" constitutional requirements:

> *First,* the party must have suffered an actual injury or demonstrate the imminence of such injury. *Second,* the injury "must be fairly traceable to the challenged conduct." *Finally,* the party must demonstrate that a favorable decision will likely redress the injury.

*Id.* (emphasis added) (citations omitted).

■ Even if the "irreducible" constitutional requirements are met, a party must show that prudential considerations do not favor the exercise of judicial restraint from hearing such action. *Id.* The Supreme Court identified three factors weighing

against judicial action, even when a party meets the "irreducible" constitutional requirements:

> (1) assertion of a third party's rights rather than individual legal rights; (2) allegation of a generalized grievance rather than an injury peculiar to such litigant; or (3) assertion of an injury outside the statute's or constitutional provision's zone of interests.

*Id.* (citing *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. at 759–60).

#### i. "As Applied" Claims[3]

 The Court finds that the Plaintiffs cannot fulfill the second "irreducible" constitutional requirement that the alleged injury, the denial of the June 15, 1994 special use application, is "fairly traceable to the challenged conduct," i.e., the City's promulgation or enforcement of the Ordinance. The Zoning Coordinator specified in her June 29, 1994 letter five enumerated reasons, unrelated to the Ordinance, why the City denied the application.[4] The Zoning Coordinator concluded that "it is mandatory that the application be denied" based exclusively on those five delineated deficiencies.[5] Plaintiffs, therefore, cannot satisfy the threshold requirement that the alleged injury stems from the Ordinance because they cannot establish that the Ordinance was ever applied to the property. *Eide v. Sarasota County*, 908 F.2d 716, 724 (11th Cir.1990), *cert. denied,*

498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991).

#### ii. Facial Constitutional Challenges [6]

 Courts generally will not entertain a challenge to the facial constitutionality of an ordinance. The only exceptions to this well-recognized rule pertain to laws that are written so broadly that they may inhibit the constitutionally protected First Amendment rights of third parties. The Court finds that the instant case does not present the exceptional circumstances necessary to sustain a facial constitutional challenge to the Ordinance.

Even if Plaintiffs did enjoy standing, their claims would fail to survive the motion for summary judgment based on the merits of the claims. The Court will address each claim in turn.

#### b. *Equitable Estoppel*

Plaintiffs argue that the Ordinance is unconstitutional and is barred by the doctrine of equitable estoppel. Plaintiffs assert that they reasonably relied in good faith on the acts of the City and made a substantial change in position and incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights acquired by the Plaintiffs when they purchased the subject property. Plaintiffs assert that they relied in good faith specifically on the June 28, 1990 letter from the Zoning Coordinator and the June 29, 1990 letter from the Assistant City Attorney.

---

3. The "as applied" claims asserted by the Plaintiffs are the claims based on the theories of (a) equitable estoppel, (b) inverse condemnation, (c) unlawful bill of attainder, and (d) improper predicate for the Ordinance's adoption. These claims all turn on how the Ordinance was applied specifically to the Plaintiffs and the property.

4. The five reasons cited by the Zoning Coordinator for denying the application were: (1) the legal description on the site plan differed from the legal description on the survey; (2) the site plan did not show sufficient parking; (3) the site plan did not comply with the off-street loading and unloading requirements; (4) Plaintiffs did not submit sufficient evidence to verify the existence of a dedicated and maintained right-of-way on the East side of the property; and (5) the Fire Transportation Planning Division and Site Review Services submitted various additional objections and comments.

5. Although the Zoning Coordinator's June 29, 1994 letter references that a "Text Amendment" to the Ordinance had been filed and would serve as an additional ground for denial of Plaintiffs' application, the application was "mandatorily" denied in the previous paragraph of the letter based solely on the general zoning deficiencies and without mention of the pending text amendment. The Court further notes that the text amendment to the Ordinance was not enacted until after denial of the application.

6. The "facial constitutional challenges" asserted by the Plaintiffs are the claims based on theories of (a) insufficient alternative avenues of expression, (b) prior restraint, and (c) equal protection. These claims mount hypothetical challenges that do not depend on how or even whether the Ordinance was ever applied to the Plaintiffs.

Plaintiffs' equitable estoppel argument must fail because Plaintiffs were free to appeal the denial of their special use application to the City Council. Plaintiffs, however, did not utilize this procedure and, therefore, failed to exhaust their administrative remedies.[7] Any claim for equitable estoppel is, therefore, premature and barred under Florida law. *See City of S. Miami v. Shirley Homes, Inc.*, 291 So.2d 40, 42 (Fla. 3d DCA 1974).

Plaintiffs' claim of equitable estoppel also fails because they cannot show that they relied in good faith, which is an essential element of estoppel. The Court finds that Plaintiffs had no reason to rely on the letters of the Zoning Coordinator and Assistant City Attorney as representations that if the 500–foot setback was satisfied, then their special use application would be approved. Plaintiffs were aware of the proposed text amendment prior to closing on the property. There is no evidence on the record that if the Plaintiffs did not follow through on the contract for purchase of the property that there would be subsequent ramifications, financial or otherwise.

### c. *Inverse Condemnation*

Plaintiffs contend that through the provisions of the Ordinance, the Defendants have denied Plaintiffs substantive and procedural due process of law and, as enforced, have suspended and eliminated Plaintiffs' business property without compensation.

The Eleventh Circuit articulates the "ripeness test" for inverse condemnation claims as follows:

> In order for such a claim to be ripe for adjudication, the landowner must overcome two hurdles: the final decision hurdle and the just compensation hurdle. The landowner must obtain a final decision regarding the application of the zoning ordinance or regulation to his or her property and utilize state procedures which provide for obtaining just compensation.

*Eide*, 908 F.2d at 720–21; *see also Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1542 (11th Cir.1991).

Plaintiffs have not satisfied either the "final decision" or the "just compensation" prong of the ripeness test. The "final decision" prong requires that the property owner seek variance or to appeal the denial of this application to the City Council. Additionally, the Plaintiffs' complaint does not even allege that they pursued "the available state procedures to obtain just compensation." *Eide*, 908 F.2d at 720–21. For these reasons, Plaintiffs inverse condemnation claim is not ripe for adjudication by this Court.

Plaintiffs have also failed to establish that they have been deprived of substantially all economic, beneficial, or productive use of the property. Unless there is such a deprivation, inverse condemnation will not obtain. *See City of Key West v. Berg*, 655 So.2d 196 (Fla. 3d DCA 1995); *see also City of Pompano Beach v. Yardarm Restaurant, Inc.*, 641 So.2d 1377, 1384 (Fla. 4th DCA 1994) (citing *Tampa–Hillsborough County Expressway Auth. v. A.G.W.S. Corp.*, 640 So.2d 54, 58 (Fla.1994)). A "takings" claim is appropriate only where a governmental entity effectively denies the landowner all economically viable uses of the land. *See generally United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).

Plaintiffs' inverse condemnation claim fails for one additional reason. Under Florida law, zoning changes alone cannot give rise to claims for inverse condemnation. *Lee County v. Morales*, 557 So.2d 652, 656 (Fla. 2d DCA 1990) (citing *Pinellas County v. Ashley*, 464 So.2d 176, 177 (Fla. 2d DCA), *rev. denied*, 475 So.2d 693 (Fla.1985)). A claimant's only recourse is to have the challenged zoning law stricken. *See Grady v. Lee County*, 458 So.2d 1211, 1213 (Fla. 2d DCA 1984).

### d. *Unlawful Bill of Attainder*

To prevail on their claim for an unlawful bill of attainder, Plaintiffs must estab-

---

7. Plaintiffs argue that they did not have to pursue these administrative remedies because the relief they sought (i.e., waiver of the specific standards) is precluded by the City of Tampa Code. Plaintiffs fail, however, to cite any authority for this proposition.

lish that the Ordinance: (1) legislatively determines guilt; (2) inflicts punishment; (3) upon an identifiable individual; (4) without provision of the protections of a judicial trial. Plaintiffs, however, have failed to establish any of the elements for an unlawful bill of attainder.

First, the Ordinance does not legislatively determine guilt. Second, the Ordinance in no way "inflicts punishment." The Ordinance, like other zoning laws, furthers non-punitive legislative purposes by regulating land use within the City's boundaries. Third, the Ordinance does not identify a particular individual to receive punishment. The Ordinance applies across-the-board to all similarly situated property owners. The fact that the Ordinance might be applied to the Plaintiffs simply does not make it an unconstitutional bill of attainder. *See, e.g., Song v. City of Elyria, Ohio,* 985 F.2d 840, 844 (6th Cir. 1993). Finally, the City's special use ordinance *does* contain an express right to judicial review. Accordingly, judicial review of the City's action is statutorily available.

### e. *Improper Predicate*

The Plaintiffs argue that there was an improper predicate for the adoption of the Ordinance. An ordinance can only be justified if it attempts to regulate the so-called "adverse secondary effects" allegedly engendered by adult entertainment establishments, and the adverse secondary effects must be established through competent, substantial evidence. Plaintiffs argue that there was no evidence, studies or any data presented by any party to the City Council to substantiate any justification for the imposition of a setback restriction between "adult uses" and "office uses."

The Court finds that the City of Tampa laid a proper predicate for adoption of the Ordinance. The Ordinance notes that the locational criteria pertaining to adult uses "was initially adopted based on studies presented at previous public hearings demonstrating such uses have deleterious effects on adjacent property . . . ."

The files utilized by the City Council in readopting the Ordinance include: 1) a September 30, 1982 study of "The Impact of Adult Entertainment Centers on the Community of Tampa, Florida" by Robert W. Taylor, Ph.D.; 2) a "Summary of Events Leading to Adopting Special Zoning Ordinance 1977–78," dated September 16, 1982 and prepared by City Police Chief Robert L. Smith; 3) a transcript of a July 1, 1982 "Workshop: re draft proposal of establishing a locational criteria for adult bookstores, adult theatres, and special cabarets"; 4) a copy of an April 5, 1976 *Time Magazine* article dealing with pornography and adult uses; 5) a copy of the U.S. Supreme Court's opinion in *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); 6) a copy of Detroit's adult use ordinance, which was the subject of the *Young* case; and 7) minutes of the September 16 and 30, 1982 public hearings regarding the enactment of the City's Adult-Use Ordinance. The Court finds that the predicate documents were sufficient to establish the secondary effects upon businesses caused by adult uses.

### f. *Insufficient Alternative Avenues of Expression*

■■■ Plaintiffs assert that there is a substantial likelihood that the provisions of the Ordinance that prohibit the establishment of any adult entertainment business within 500 feet of any district allowing for "office use," are unconstitutional in that they "effectively deny" Plaintiffs and other adult business operators a "reasonable opportunity to open and operate an adult business" in the City of Tampa. Plaintiffs claim that all current government-imposed regulations, coupled with the fact that any party can petition the City for a rezoning within any PD zoning district, severely and unconstitutionally restricts the number and location of permissible areas for adult entertainment businesses, such that these businesses have no realistically reasonable opportunity for finding any type of potentially viable alternative location.

The Supreme Court in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 54, 106 S.Ct. 925, 932, 89 L.Ed.2d 29 (1986), held that an adult use ordinance passes constitutional muster if it simply affords "a reasonable opportunity to open and operate an adult theater within the city." In *Renton,*

the Supreme Court found that an ordinance leaving 520 acres, or more than 5% of the city's entire land mass, open for adult theater sites easily meets this requirement. *Id.* at 53–54, 106 S.Ct. at 931–32.

Several federal courts, including this Court, have found sufficient "alternative avenues of communication" for adult uses where even fewer sites are available. *See T–Marc, Inc. v. Pinellas County,* 804 F.Supp. 1500, 1504 (M.D.Fla.1992) (Kovachevich, J.) (noting cases in which as few as 11 locations provided plaintiffs with adequate "alternative avenues of communication"); *Function Junction, Inc. v. City of Daytona Beach,* 705 F.Supp. 544, 552 (M.D.Fla.1987) (12 locations); *Southern Entertainment Co. of Fla., Inc. v. City of Boynton Beach,* 736 F.Supp. 1094, 1101 (S.D.Fla.1990) (11 locations); *International Eateries of Am., Inc. v. Broward County,* 941 F.2d 1157, 1165 (11th Cir.1991) (26 potential sites); *International Food & Beverage Sys. v. City of Fort Lauderdale,* 794 F.2d 1520, 1526 (11th Cir.1986) (22 sites adequate).

The Defendants have submitted affidavits of Gina Grimes, Assistant City Attorney for the City of Tampa, establishing that even following the enactment of the text amendment, 72 sites, totaling 5,364 acres, remain available within the City for establishment of adult uses. This acreage totals more than seven and one-half percent (7½%) of the City's land area. Therefore, the Ordinance not only meets, but exceeds, the First Amendment protections required by *Renton.*[8]

### g. *Prior Restraint*

The Plaintiffs also argue that the Ordinance lacks adequate procedural safeguards and has no provision for constitutionally prompt judicial review. As a presumptively First Amendment protected activity, the continuation of such activity under the requirements of any ordinance mandates that the application for any permit and the procedural administration of the review of any such application be prompt and contain adequate procedural safeguards; any review of denial is also subject to the same procedural safeguards. Under the City of Tampa Code, the Zoning Coordinator must review an application and issue a determination within 30 days of receipt thereof; appeal of the Zoning Coordinator's decision is made directly to the City Council; City Council will hear the appeal and rule on it within 45 days of receipt of a complete application; review of City Council's decision is to the circuit court. The Zoning Coordinator denied the Plaintiffs' special use application fourteen days after it was filed. Plaintiffs did not file an appeal with the City Council.

The Plaintiffs are concerned that the City of Tampa Code does not set forth any mandatory allowance to begin an adult use should the Zoning Coordinator not render a decision within 30 days and that there are no mandatory time limits for rendering a speedy judicial decision on appeal to the City Council. The Plaintiffs argue that the requirement of appeal to the City Council prior to judicial review renders the permit requirement facially unconstitutional as an impermissible prior restraint.

The Court finds that the Ordinance does not effect a prior restraint. There is no danger that the Ordinance will have a chilling effect on others since the City has always acted on adult use applications in a timely fashion. *See Ward v. Rock Against Racism,* 491 U.S. 781, 795, 109 S.Ct. 2746, 2755, 105 L.Ed.2d 661 (1989); *Stokes v. City of Madison,* 930 F.2d 1163, 1169–70 (7th Cir.1991). Since the reenactment of the Ordinance in 1990, the Zoning Coordinator has never failed to render a decision on an adult use application within 30 days after the applica-

---

8. The fact that some of the City's 72 available sites might be preoccupied or economically infeasible does not diminish the "availability" of these sites for First Amendment purposes. *See T–Marc,* 804 F.Supp. at 1504–05; *D.G. Restaurant Corp. v. City of Myrtle Beach,* 953 F.2d 140, 147 (4th Cir.1991). Plaintiffs' claim that restrictions other than the Ordinance reduce the alternative avenues of expression is similarly una-

vailing. In evaluating whether the Ordinance unconstitutionally deprives Plaintiffs from engaging in expression, the Court must look solely to the restrictions contained within the Ordinance. *See T–Marc,* 804 F.Supp. at 1504; *see also SDJ, Inc. v. City of Houston,* 636 F.Supp. 1359 (S.D.Tex.1986), *aff'd,* 837 F.2d 1268 (5th Cir.1988).

tion's submittal, and the City Council has never failed to render a decision on appeal of the denial of an adult use special permit within the 45 days allotted by the City of Tampa Code.

#### h. *Equal Protection*

■ The Plaintiffs claim that the Ordinance singles out adult entertainment establishments for special zoning treatment. More specifically, the Plaintiffs claim that it is undisputed that other land uses and businesses, including fast food restaurants, liquor lounges and other non-adult businesses, have secondary effects akin to those to which the Ordinance allegedly seeks to control; yet these other land uses are not subject to the zoning requirements of the Ordinance.[9]

To the extent that Plaintiffs attempt to make an equal protection challenge to the City's entire adult use ordinance, that challenge must fail. In *Renton*, adult theatre owners claimed that a zoning ordinance remarkably similar to the Ordinance at issue here violated their rights under the Equal Protection Clause. Summarily rejecting this argument, the Supreme Court stated that "respondents can fare no better under the Equal Protection Clause than under the First Amendment itself." 475 U.S. at 55, n. 4, 106 S.Ct. at 933, n. 4.

In *Young*, the Supreme Court also expressly sanctioned disparate treatment of adult uses for zoning purposes, stating:

> Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures.

. . . .

We hold that the zoning ordinances requiring that adult motion picture theaters not be located within 1,000 feet of two other regulated uses does not violate the Equal Protection Clause of the Fourteenth Amendment.

427 U.S. at 70–73, 96 S.Ct. at 2452–53. The Fifth Circuit applies the same analysis to topless bars. *See SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1280 (5th Cir.1988) ("Because topless bars are not a 'protected class,'" the city need only demonstrate that the restrictions placed on those businesses are reasonably related to a legitimate government interest.).

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendants' Motion for Summary Judgment (Doc. No. 25) is **GRANTED.**

(2) The Clerk is directed enter judgment, in accordance with Fed.R.Civ.P. 54(b) and 58, in favor of the Defendants.

(3) The Clerk is directed to CLOSE this case.

**DONE AND ORDERED.**

---

9. Plaintiffs also attempt to argue that there is an "unequal application of the law" because general standard deficiencies in a commercial site plan review result in an opportunity to revise, negotiate and modify the deficiencies for additional review, whereas a review of a special use application does not afford the same opportunity. Plaintiffs contend that "the Ordinance denies the equal protection [sic] of the law, clearly operates as a prior restraint, and, since it 'punishes' adult use special use applicants by demanding the application of an entirely different commercial site review process, operates as an unlawful bill of attainder." The Plaintiffs, however, have failed to adequately establish that the two review processes are equivalent enough processes that a differential level of evaluation between the two would support their constitutional arguments. See deposition of Gina Grimes, Exhibit D to Doc. No. 45, p. 107–08: "It's a different level of—it's a different degree of detailed review. You're talking about a special use, which is a zoning approval, versus a commercial site plan review, which is more bricks and mortar-type review. More specific. You don't get into the detail in the zoning review that you do in a commercial site plan review."