753 So.2d 754 (2000)
421 NORTHLAKE BLVD. CORP., a Florida corporation, Appellant,
v.
VILLAGE OF NORTH PALM BEACH, a Florida municipal corporation, Appellee.
No. 4D99-0432.
District Court of Appeal of Florida, Fourth District.
March 22, 2000.
*755 Richard L. Wilson, Orlando, and Jonathan R. Kaplan, West Palm Beach, for appellant.
Thomas J. Baird of Thomas J. Baird, P.A., North Palm Beach, for appellee.
PER CURIAM.
421 Northlake Boulevard Corporation appeals from the trial court's order enjoining it from operating its nightclub, Crystal's, as an adult entertainment establishment in violation of section 45-20 of the Code of Ordinances for the Village of North Palm Beach ("the Village").
In 1997, the Village filed a complaint against Co & Co Enterprises, Inc., the predecessor to appellant, seeking an injunction to prevent Co & Co from operating Crystal's nightclub as an adult entertainment business. Later that year, appellant became a party to the suit when it acquired Crystal's. Appellant responded by challenging the constitutionality of the zoning ordinance under the First Amendment, both as the ordinance existed when Crystal's opened and as amended in August of 1998.
Section 45-20 of the Code of Ordinances for the Village provided that an adult entertainment business could lawfully operate within the C-1 commercial zoning district, but prohibited, among other distance prohibitions, the operation of any adult entertainment establishment within 2,000 feet of an existing adult entertainment establishment or within 200 feet of residentially zoned areas and pre-existing residences. In August 1998, the Village amended section 45-20. The amendment permitted an adult business to operate within C-1 and C-2 commercial zoning districts and deleted the 200-foot distance restriction between an adult business and pre-existing residences.
James Fleischmann, a land use consultant for the Village, testified as the only expert witness. According to Fleischmann, in 1998 the Village had a population of approximately 12,200 citizens residing within an area of approximately 2.6 square miles.[1] Of this land, 173 acres is zoned for commercial use. Seventy percent of the 173 acres lies within a C-1 or C-2 commercial zone and comprises just under ten percent of the populated 2.6 square miles.
Fleischmann further testified that when Crystal's opened, the only site at which an adult entertainment business could have located under the 1996 version of section 45-20 was the location of Adult Video Warehouse, an existing adult business. Although other sites, such as the International House of Pancakes at U.S. Highway 1 and Northlake Boulevard, would have satisfied all but one of section 45-20's distance requirements, those sites violated the prohibition against locating an adult business within 2,000 feet of an existing adult business (in this case, Adult Video Warehouse). Fleischmann testified that the amendment, which added the C-2 commercial zone and deleted the prohibition against locating within two hundred feet of a pre-existing residence, resulted in additional *756 sites within the Village that satisfied section 45-20's distance requirements: Mobil Lube Express, Ed Morse Chevrolet, Citgo service station, and Eyeglass World. He explained, however, that because of the 2,000-foot requirement, "[i]f a site were to go on any one of those four lots, the other three would be eliminated." The trial court determined that the ordinance was constitutional as enacted in 1996 and as amended in 1998. The court also enjoined appellant from operating Crystal's as an adult entertainment nightclub. Following a separate evidentiary hearing, the trial court awarded $9,600 in expert witness fees for Fleischmann's services as costs.
Appellant raises three points on appeal. First, appellant contends that the 1996 version of section 45-20 violated its right to exhibit adult dancing under the First Amendment. Second, appellant argues that the 1998 version of the ordinance also violates the First Amendment. Third, appellant argues that the trial court erred when it awarded the Village an expert witness fee of $9,600. We affirm.
Initially, we hold that the Village's 1998 amendment of the ordinance renders appellant's challenge to the 1996 version of section 45-20 moot. See, e.g., Carchio v. City of Fort Lauderdale, 755 So.2d 668, 669-70 (Fla. 4th DCA 1999) (holding that the challenge to the constitutionality of a 1996 Fort Lauderdale ordinance was moot where the ordinance had been amended in 1998); see also City of Boynton Beach v. Carroll, 272 So.2d 171, 172 (Fla. 4th DCA 1973) ("[T]he general rule in [zoning] suits of this nature is that the law in effect at the time of the final decision governs, notwithstanding the fact that there has been a change in the law since the time of application [for building permit].").
We are not persuaded by appellant's argument that if the 1996 ordinance were held unconstitutional, that Crystal's would be a lawful, non-conforming use at its present site. Appellant stipulated at trial that Crystal's, though operating as an adult entertainment establishment since 1997, never obtained or even applied for an adult entertainment license from the Village. Therefore, Crystal's cannot be deemed a lawful, non-conforming use, regardless of the constitutionality of the 1996 ordinance.
Appellant next challenges the constitutionality of the 1998 version of section 45-20 as a violation of free speech under the First Amendment. While nude dancing enjoys a measure of protection under the First Amendment, the nature of the protection is limited, and the government may place reasonable restrictions upon the exercise of adult, sexually oriented expression. See Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); Schad v. Borough of Mount Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Although adult entertainment zoning ordinances distinguish between forms of communication based upon content, courts have generally recognized that the ordinances principally regulate the negative "secondary effects" of adult businesses on the community rather than the content of expression. Therefore, adult zoning ordinances have traditionally been examined as content-neutral "time, place, or manner restrictions." See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The appropriate inquiry for a First Amendment challenge to a content-neutral adult establishment zoning ordinance is whether the ordinance is designed to serve a substantial government interest, whether the ordinance is narrowly tailored to serve that governmental interest, and whether the ordinance allows for reasonable alternative avenues of communication. Id. at 52, 106 S.Ct. 925; Schad, 452 U.S. at 68, 75-76, 101 S.Ct. 2176.
In this appeal, appellant contests only the availability of reasonable alternative *757 avenues of communication. We must first determine how many potential alternative sites are "available" to adult businesses such as Crystal's desiring to locate in the Village. In Renton, the Court examined a dispersal zoning ordinance much like in the case at bar, in which adult theaters could "not be located within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school." 475 U.S. at 46, 106 S.Ct. 925. Regarding "alternative avenues of communication," the Court stated that "the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city." Id. at 54, 106 S.Ct. 925. Noting that 520 acresmore than 5 percent of the total area of Rentonwas available for adult theater locations, the Court concluded that the ordinance as applied did not violate the First Amendment. Id. at 53, 106 S.Ct. 925. Most notably, the Court rejected the adult business's claim that developed portions of the land was occupied by existing businesses and that "practically none" of the undeveloped land was currently for sale or lease:
That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation.... [W]e have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices.
Id. at 54, 106 S.Ct. 925.
The Fifth Circuit, in Woodall v. City of El Paso, 49 F.3d 1120 (5th Cir.1995), elaborated,
[I]n determining whether there are sufficient sites available, the finder of fact may exclude land under the ocean, airstrips of international airports, sports stadiums, areas not readily accessible to the public, areas developed in a manner unsuitable for any generic commercial business, areas lacking in proper infrastructure, and so on.... However, the fact that a site may not be commercially desirable does not render it unavailable. It is not relevant that a relocation site will result in lost profits, higher overhead costs, or even prove commercially unfeasible for an adult business.... There is no requirement that an adult business be able to obtain existing commercial sites at low cost and with market access to ensure its prosperity.
Id. at 1124. The Woodall court also declared that the number of acres available to adult use zoning is irrelevant by itself: "What is important is the number of adult business locations that the acreage will support given the spacing requirements." Id. at 1125; see also Walnut Properties, Inc. v. City of Whittier, 861 F.2d 1102, 1108 (9th Cir.1988).
The expert witness testified that the Village consists of only 2.6 square miles of land that is not comprised of water or state park. Seventy percent of the land zoned for commercial use has been designated as C-1 or C-2 zones, which are the appropriate zones for adult entertainment establishments under the ordinance. Within those commercial use zones, at least two sites are currently available for use by an adult entertainment establishment: the site of Adult Video Warehouse; and either Mobil Lube, Ed Morse Chevrolet, Citgo, or Eyeglass World. Appellant argues that the sites are inappropriate for use because they lack ample parking or because they are cost-prohibitive or too small. We conclude, however, based upon Renton and its progeny, that such infirmities do not cause the sites to be "unavailable," as appellant must "[f]end for [it]self in the real estate market, on an equal footing with other prospective purchasers and lessees." See Renton, 475 U.S. at 54, 106 S.Ct. 925.
Appellant also argues that the trial court improperly considered sites outside the municipality within a five-mile radius of North Palm Beach. The United States Supreme Court and the Eleventh Circuit have expressly declined to hold whether outside sites may be considered. See *758 Schad, 452 U.S. at 76-77, 101 S.Ct. 2176; Boss Capital, Inc. v. City of Casselberry, 187 F.3d 1251, 1254. We need not decide whether the trial court properly considered sites outside the Village because we hold that the two available siteson as many as five different locationsconstitute "reasonable alternative avenues of communication" under the First Amendment.
We hold that, given the extremely small area and modest population of the Village, two sites satisfy appellant's constitutional right to freedom of expression. Moreover, the ratio of potential sites to population in this caseone site per 6,100 residentsis consistent with the ratios approved by other courts of this state when faced with this issue. See Centerfold Club, Inc. v. City of St. Petersburg, 969 F.Supp. 1288, 1306 (M.D.Fla.1997) (noting that the district courts had approved ratios of one site per 4,208 residents in Boynton Beach, per 5,939 residents in Broward County, per 5,166 residents in Daytona Beach, per 6,761 residents in Fort Lauderdale, and per 2,182 for Pinellas County; and rejecting the ratio of one site per 12,535 residents in St. Petersburg).
Lastly, we reject appellant's argument that the trial court erred by awarding an expert witness fee of $9,600. The record supports the trial court's finding that the expert's testimony was useful and that his fee was reasonable.
Accordingly, we affirm the trial court's order holding section 45-20 of the Code of Ordinances for the Village of North Palm Beach constitutional and enjoining appellant from operating its nightclub, Crystal's, as an adult entertainment establishment. We also affirm the trial court's award of $9,600 for expert witness fees.
AFFIRMED.
DELL, STONE and POLEN, JJ., concur.
NOTES
[1] The Village has an additional 2.6 square miles of land which is comprised of water-ways and John D. MacArthur Beach State Park.