779 So.2d 404 (2000)
P.M. REALTY & INVESTMENTS, INC., Appellant,
v.
CITY OF TAMPA, Florida, a municipal corporation, and Gloria Moreda, in her official capacity as zoning administrator for the city of Tampa, Florida, Appellees.
No. 2D99-135.
District Court of Appeal of Florida, Second District.
August 25, 2000.
*405 Luke Charles Lirot of Luke Charles Lirot, P.A., Tampa, for Appellant.
James D. Palermo, City Attorney, Gina Grimes, Chief Assistant City Attorney, and Richard E. Fee, Assistant City Attorney, Tampa, for Appellees.
GREEN, Judge.
P.M. Realty & Investments, Inc. (P.M.), timely appeals the trial court's nonfinal order granting the motion for a preliminary injunction filed by the city of Tampa, Florida, a municipal corporation, and Gloria Moreda, in her official capacity as zoning administrator for the city of Tampa, Florida (Tampa). We affirm.
In February 1996, P.M. engaged in a business called the Club Flamingo, in a historic district of Tampa, Florida, known as Ybor City. The development of Club Flamingo was undertaken with the specific intent of offering to the public the vending of alcoholic beverages and the presentation of exotic dance performances.
P.M. contends that the trial court erred by finding that the required special use permit procedures in chapter 27 of the Tampa City Code were controlling authority over its motion to dismiss. P.M. also contends that chapter 27 of the Tampa City Code constitutes a prior restraint on free speech due to lack of adequate procedural safeguards and that the ordinance denies P.M. equal protection of the law. P.M. further contends that imposition of the ordinance constitutes a taking of or infringement on its First Amendment right and that the ordinance is facially unconstitutional and unconstitutional as applied.
Club Flamingo began business in Ybor City without applying for a special use *406 permit required by Tampa for adult businesses. P.M.'s reasoning was that Club Flamingo was surrounded by night clubs serving alcohol which were not affected by the existence of the cabaret.

I. Whether a Temporary Injunction Should be Granted
The standard of review in this appeal is abuse of discretion, which is based on the principle of general reasonableness. See Richard v. Behavioral Healthcare Options, Inc., 647 So.2d 976 (Fla. 2d DCA 1994). The correct four-part test set out in Cosmic Corp. v. Miami-Dade County, 706 So.2d 347 (Fla. 3d DCA 1998), was applied in this case. The fourpart test provided for in Cosmic Corp. is as follows:
A temporary injunction should only be granted where there is a showing of (1) the likelihood of irreparable harm and the unavailability of an adequate remedy at law, (2) the substantial likelihood of success on the merits, (3) that the threatened injury to petitioner outweigh any possible harm to respondent, and (4) that the granting of the injunction will not disserve the public interest.
706 So.2d at 348. P.M. believes the trial judge incorrectly applied these factors.
The trial court properly held that when one violates a city ordinance, irreparable harm is presumed. See Florida Dep't of Envtl. Reg. v. Kaszyk, 590 So.2d 1010 (Fla. 3d DCA 1991). Zoning ordinances that limit the geographical areas in which adult businesses may locate have been upheld as constitutional. See 421 Northlake Blvd. Corp. v. Village of N. Palm Beach, 753 So.2d 754 (Fla. 4th DCA 2000); see also U.S. Partners Fin. Corp. v. Kansas City, 707 F.Supp. 1090 (W.D.Mo.1989) (holding city had right to regulate time, place, and manner of offering of adult entertainment in city). Furthermore, competent, substantial evidence is not needed to support the injunction. See Centerfold Club, Inc. v. City of St. Petersburg, 969 F.Supp. 1288 (M.D.Fla. 1997) (holding that while city had burden to justify zoning ordinance for adult entertainment establishments, link was only required to be supported by reasonable belief, not by substantial, competent evidence).
P.M. argues that it did not apply for an appropriate adult use permit because chapter 27 of the city code is unconstitutional. Therefore, any injury to the city caused by noncompliance is, at most, remote and speculative, and other legal remedies would be more appropriate than an injunction. In Metropolitan Dade County v. O'Brien, 660 So.2d 364 (Fla. 3d DCA 1995), the O'Briens established a business without complying with various county ordinances or securing necessary permits. As a result, the Third District held that "where the government seeks an injunction in order to enforce its police power, any alternative legal remedy is ignored and irreparable harm is presumed." 660 So.2d at 365. The court also held that under the circumstance where one opens a business aware of the violations to the ordinances and continues to operate that business in violation, the government has a clear legal right to relief. Accordingly, we believe that Tampa has satisfied the first two prongs of the test set out in Cosmic Corp., 706 So.2d 347.
The trial judge also found that the continued violation of the city ordinance by P.M. was a greater harm to Tampa than to P.M. P.M. refused to voluntarily comply with the ordinance, leaving Tampa no choice but to seek an injunction. The club's continued operation was balanced against injury to the city, and the trial judge, in his discretion, ruled "the threatened injury to [the city] outweighs the harm to [P.M.]." This finding satisfies the third prong of the Cosmic Corp. test.
P.M. claims that the injunction does not serve the public interest because it is a restraint on the freedom and rights guaranteed by both state and federal constitutions. However, Tampa contends that the public has an interest in seeing that its *407 ordinances and city zoning plan are complied with. We agree that the injunction serves the public interest. Having satisfied the four-part test in Cosmic Corp., the temporary injunction was properly granted.

II. S-1 vs. S-2 Permit
P.M. contends that the permit required to operate an adult use business would be an S-2 special use permit, rather than an S-1 permit. The trial court ruled that the S-1 permit was required, and because P.M. did not apply for one, it was in violation. An S-1 special use permit is required where "specified uses or characteristics of use could have adverse effects on adjacent properties unless special requirements are met." Tampa, Fla., Code § 27-267(b)(1). An S-2 permit is required where "specified uses or occupancies involve matters deemed to be of citywide or area wide [sic] importance." § 27.267(b)(2). We agree with the trial court that the location of Club Flamingo requires P.M. to obtain an S-1 special use permit.

III. Is the Ordinance a Prior Restraint on Free Speech?
P.M. also contends that the zoning ordinance is a prior restraint on free speech due to either unbridled administrative discretion or lack of prompt judicial review. P.M. supports this theory by referencing a trial court order issued by Judge Manuel Lopez in State v. Fowler, Case No. 98-25685, Div. E., Hillsborough County Criminal Court (1997).
Judge Lopez, relying partly on the decision of Baby Tam v. City of Las Vegas, 154 F.3d 1097 (9th Cir.1998), found that section 27.267(1)(d), which "provides for judicial review of city council's decision by circuit court as provided by law does not provide for prompt judicial review." Judge Lopez also found that section 27.394(c), which mandates when the city council shall set a hearing but provides no time limits for the council to reach a decision, and its related provision that review of city council's decision shall be by certiorari, does not provide for prompt judicial review. Judge Lopez therefore ruled that the ordinance violated due process. We disagree.
The subject code provides that in the instance of S-1 permits the zoning administrator must review the permit application and issue a decision within thirty days. Subsection (d) of the ordinance provides for appeal by the applicant within thirty days of a decision and that review of a negative decision must be ruled upon by the city council within forty-five days. Appeal of the city council's decision is to the circuit court as provided by law. See § 27.277(1)(d). The ordinance in question is significantly different from that in the case of Baby Tam, 154 F.3d 1097, wherein the unsuccessful applicant was required to file a petition for mandamus in state court for relief.
The United States Supreme Court in the case of FW/PBS v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), emphasized that the possibility and availability of prompt judicial review will satisfy the standard. Justice O'Connor wrote that "expeditious judicial review of that decision must be available" and that "there must be the possibility of prompt judicial review in the event that the license is erroneously denied."[1] We do not rule out the possibility of a mandamus proceeding with respect to a city council recalcitrant in completing its duties. However, we do not perceive that to be a significant procedural problem and, therefore, disagree *408 with the conclusion reached by Judge Lopez.
In the present case, the trial court ruled that zoning ordinances restricting the location of adult businesses have been held not to constitute invalid prior restraints on speech. Tampa's zoning ordinance limits the location where adult businesses may operate. It does not try to prohibit the type of free speech addressed in this case. This finding is in compliance with the United States Supreme Court in the case of Young v. American Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).
With respect to P.M.'s argument that the ordinance gives Tampa unbridled discretion, the trial judge made the following findings and conclusions. We quote approvingly from the trial judge's order.
Defendant argues that the ordinance lacks adequate procedural safeguards and has no provision for constitutionally prompt review. The City of Tampa Code provides that (1) the Zoning Coordinator must review an application and issue a determination within thirty days of receipt thereof; (2) an appeal of the Zoning Coordinator's decision is made directly to the City Council; (3) the City Council will hear the appeal and rule on it within forty-five days of receipt of a complete application; (4) review of the Council's decision is made by the circuit court.
Defendant contends that (1) since the Code does not set forth any mandatory allowances to being an adult use business[,] if the Zoning Coordinator does not render a decision within thirty days, there are no mandatory time limits for rendering a speedy judicial decision on appeal to the City Council; and (2) since Defendant is required to appeal to the City Council prior to judicial review, the ordinance is an impermissible prior restraint on free speech. Zoning ordinances restricting the location of adult businesses have been determined not to constitute invalid prior restraints on free speech. See, e.g., Young v. American Mini Theaters,[Theatres] Inc., 427 U.S. [50][, 96 S.Ct. 2440] (1976); U.S. Partners Financial Corp. v. Kansas City, 707 F.Supp. 1090 (W.D.Mo.1989); Maloy v. Lewisville, 848 S.W.2d 380 (1993, Tex.App. Forth Worth) [sic]. Accordingly, Defendant's contentions are without merit.

IV. Equal Protection
P.M. claims that the different treatment Club Flamingo is receiving, compared to the other night clubs in Ybor City, is a violation of equal protection. A similar argument was raised in Young v. American Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In Young, the appellant complained that his x-rated theaters were being treated differently for zoning purposes than other movie theaters. The Supreme Court held that "the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures." 427 U.S. at 70-71, 96 S.Ct. 2440. Likewise, Tampa may use the content of the entertainment of Club Flamingo as the basis for placing it in a different classification from other night clubs.

V. Taking
P.M. contends that the trial court erred in holding that the zoning ordinance did not constitute a taking in violation of the First Amendment by suppressing or restricting access to lawful speech. The trial court correctly ruled that there was no taking. Although the club could not be used as an adult cabaret, the zoning regulations allowed for some thirty-eight alternative categories of uses. In Specialty Malls of Tampa, Inc. v. City of Tampa, 916 F.Supp. 1222 (M.D.Fla.1996), the court approvingly cited United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 126, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) (holding there is a taking "if the ordinance does not substantially advance legitimate *409 state interests ... or denies an owner economically viable use of his land"). The Tampa ordinance advances a legitimate state interest and provides for ample alternative uses of the land, and there was no taking.

VI. Whether the Ordinance is Unconstitutional
P.M. contends that the zoning ordinance is unconstitutional as applied to Club Flamingo. In support of this argument, P.M. refers to locations where surrounding parcels of land are zoned differently than the Club Flamingo parcel. Contrary to P.M.'s argument, P.M.'s parcel of land is being treated the same as other parcels in that area. None of the parcels can be used for adult uses. This is not an instance where the ordinance is applied differently and more restrictively to P.M. than to comparable adjacent parcels.
P.M. also contends that the ordinance is facially unconstitutional in that there are not enough alternative sites available to comply with the time, place, and manner test. According to City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 54, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), "the First Amendment requires only that [the city] refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city." The ordinance does not forbid P.M. from opening an adult use business within the city. The trial court went into great detail in researching the availability of alternative sites for adult uses. In fact, the trial judge visited many of the sites listed as acceptable alternate locations. Appellant's argument in this regard is without merit. See Specialty Malls, 916 F.Supp. 1222; see also 421 Northlake Blvd., 753 So.2d 754.

VII. Improper Predicate
Finally, P.M. contends that the predicate upon which the city based its ordinance is insufficient. P.M. claims the adverse secondary effects Tampa seeks to control with the ordinance must be proven by competent, substantial evidence. However, Tampa contends that the fairly debatable test controls the review of the ordinance. It is settled law that from a federal standpoint, an adult use ordinance need only satisfy the fairly debatable test. See City of Renton, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29; International Eateries of Am., Inc. v. Broward County, 941 F.2d 1157 (11th Cir.1991).
There has been some confusion as to which standard applies in Florida. However, we agree with the trial court that the fairly debatable test should be used for review of legislative zoning enactments. This decision is in compliance with the Florida Supreme Court in Nance v. Town of Indialantic, 419 So.2d 1041 (Fla. 1982) (holding the fairly debatable test should be used to review legislative-type zoning enactments, while a variance seeker must demonstrate a unique hardship in order to qualify for a variance), and Board of County Commissioners v. Snyder, 627 So.2d 469 (Fla.1993) (holding comprehensive rezonings affecting a large portion of the public are legislative in nature and are subject to fairly debatable standard of review). This court has addressed the issues raised in Nance and Snyder in Lee County v. Sunbelt Equities, II, Ltd. Partnership, 619 So.2d 996 (Fla. 2d DCA 1993). In Sunbelt Equities, this court quoted Nance as stating the fairly debatable test was created to review the legislative-type enactments of zoning ordinances.
Accordingly, we affirm the order of the trial court.
CAMPBELL, A.C.J., and ALTENBERND, J., Concur.
NOTES
[1] The comments in F.W./PBS v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), have been construed differently in various federal circuits. However, we do not believe those differences have application in this case. See City News & Novelty, Inc. v. City of Waukesha, 231 Wis.2d 93, 604 N.W.2d 870 (Wis.App.1999); see also Blue Moon Enters., Inc. v. Pinellas County Dep't of Consumer Protection, 97 F.Supp.2d 1134 (M.D.Fla.2000) ("prompt judicial review" means access to such review; prompt, final decision is not required).