805 So.2d 932 (2001)
William EAST and Gaming Technology, Inc., Appellants,
v.
AQUA GAMING, INC., Appellee.
No. 2D00-3284.
District Court of Appeal of Florida, Second District.
November 7, 2001.
*933 Scott H. Carter of Dunlap & Moran, P.A., Sarasota (withdrew after briefing); Dennis J. Cary of Dennis J. Cary, P.A., Boca Raton (substituted as counsel of record), for Appellants.
Hala A. Sandridge and Carl Joseph Coleman of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, and Michael A. Levin, Miami, for Appellee.
DANAHY, (Senior) Judge.
William East and Gaming Technology, Inc., appeal the trial court's order granting Aqua Gaming, Inc.'s motion for temporary injunction restraining them from engaging in competitive business with Aqua Gaming until the resolution of Aqua Gaming's suit against Mr. East and Gaming Technology for permanent injunctive relief and damages. We affirm the trial court's order in part, reverse in part, and remand for the entry of an order that imposes more limited terms of injunction and requires Aqua Gaming to post a bond.
The evidence at the hearing on the motion for temporary injunction showed that Aqua Gaming operated a casino gaming renovation and resale business with customers in various parts of the United States, the Caribbean, and South America. Mr. East was employed by Aqua Gaming for several years. He resigned in April 2000 when he and his wife formed Gaming Technology, a company also in the business of buying, selling, and refurbishing casino gaming equipment. Upon leaving Aqua Gaming, Mr. East took a list of casinos, vendor names, telephone numbers, addresses, and contact persons compiled by Aqua Gaming over a number of years. Mr. East used the confidentially obtained information in an attempt to solicit Aqua Gaming's customers for Gaming Technology.
Because Aqua Gaming had taken reasonable measures to keep the information confidential, the trial court ruled that the information Aqua Gaming sought to protect constituted a trade secret under chapter 688, Florida Statutes (1999). In the order on the motion for temporary injunction, the trial court prohibited Mr. East and Gaming Technology from using any confidential information they obtained and ordered them to return such information to Aqua Gaming, including computer discs, a cellular telephone, and "all other items identified in the exhibits by Aqua Gaming, Inc. and acknowledged by William East." The order also restrained Mr. East and Gaming Technology from engaging in competitive business with Aqua Gaming within the territory in which Aqua Gaming currently operates.
Section 688.002(4), Florida Statutes (1999), states:
(4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

*934 (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
See also Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (Fla. 2d DCA 1989) (considering, in deciding whether customer list is a trade secret, whether list is product of great expense and effort and is confidential); Dicks v. Jensen, 768 A.2d 1279 (Vt.2001) (stating that list of potential or existing customers which is not readily ascertainable has value and can be a trade secret).[1] Although conflicting evidence was presented at the hearing, there is sufficient evidence to support the trial court's determination that Aqua Gaming's customer list and the other exhibited information qualifies as a trade secret. Aqua Gaming showed that its customer list was the product of great expense and effort, that it included information that was confidential and not available from public sources, and that it was distilled from larger lists of potential customers into a list of viable customers for its unique business.
The standard of review in an appeal from an order granting a temporary injunction is an abuse of discretion. See P.M. Realty & Invs., Inc. v. City of Tampa, 779 So.2d 404 (Fla. 2d DCA 2000), review denied, 786 So.2d 580 (Fla.2001).
P.M. Realty sets out the fourpart test for granting a temporary injunction:
A temporary injunction should only be granted where there is a showing of (1) the likelihood of irreparable harm and the unavailability of an adequate remedy at law, (2) the substantial likelihood of success on the merits, (3) that the threatened injury to petitioner outweigh [sic] any possible harm to respondent, and (4) that the granting of the injunction will not disserve the public interest.
779 So.2d at 406 (quoting Cosmic Corp. v. Miami-Dade County, 706 So.2d 347, 348 (Fla. 3d DCA 1998)). Based on the evidence presented at the hearing, the trial court found that Mr. East used trade secrets obtained from Aqua Gaming in an attempt to acquire "the very business accounts that [Aqua Gaming] had in progress while William East was employed by Aqua Gaming, Inc." The trial court also found that Mr. East's attempt "to `jump start' his business by taking the heart out of [Aqua Gaming's] business was intended to destroy" Aqua Gaming, that Aqua Gaming would continue to suffer irreparable injury unless a temporary injunction was issued, and that there was no other adequate remedy at law. Therefore, the first prong of the test set out in P.M. Realty has been met. As to the second prong of the test, we hold that based on the evidence, Aqua Gaming has a substantial likelihood of success on the merits in the underlying suit for permanent injunctive relief and damages. The evidence further satisfies the third prong requiring a showing that threatened injury to Aqua Gaming outweighs any possible harm to Mr. East and Gaming Technology. Finally, as to the fourth prong, it is apparent that an injunction prohibiting a former employee from using trade secrets to solicit existing customers clearly does not disserve the public interest of protecting legitimate business interests. Accordingly, the trial court did *935 not abuse its discretion in entering the injunction protecting Aqua Gaming's confidential information.
While we affirm that portion of the trial court's order that restrains Mr. East and Gaming Technology from using confidential information obtained by Mr. East while employed at Aqua Gaming and that portion of the order requiring Mr. East and Gaming technology to return all confidential and other information taken from Aqua Gaming, we reverse that portion of the order restraining Mr. East and Gaming Technology from "engaging in competitive business with Aqua Gaming, Inc. within the same territory in which Aqua Gaming, Inc. currently operates." As argued by Mr. East and Gaming Technology, this portion of the order goes beyond enjoining the use of the misappropriated trade secrets. The order mandates that Mr. East and Gaming Technology refrain from all competition within the same broad territory where Aqua Gaming operates. Where, as here, there is no covenant not to compete, and where the former employee, obeying the temporary injunction, does not use trade secrets obtained while in the employ of the former company, the former employee is free to engage in a competing business. See Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla. 2d DCA 1958).
Finally, we note that as a prerequisite to obtaining temporary injunctive relief, Florida Rule of Civil Procedure 1.610(b) requires the plaintiff to post a bond in an amount set by the trial court to pay costs and damages if the other party is wrongfully enjoined. It is error for the trial court to enter a temporary injunction which fails to require the movant to post a bond. See Bellach v. Huggs of Naples, Inc., 704 So.2d 679 (Fla. 2d DCA 1997). On remand, the trial court shall set a bond "after providing both parties with the opportunity to present evidence regarding the appropriate amount." Bellach, 704 So.2d at 680.
Affirmed in part, reversed in part, and remanded with directions.
PARKER, A.C.J., and DAVIS, J., Concur.
NOTES
[1] The definition of "trade secrets" in the Vermont Trade Secrets Act is the same as the definition in the corresponding Florida act.