2284 CORPORATION, d/b/a Dangerous Curves, et al., Plaintiffs,

v.

Mark A SHIFFRIN, et al., Defendants.

No. 3:98CV102 RNC.

United States District Court,
D. Connecticut.

March 30, 2000.

Gary Mastronardi, Bridgeport, CT, for Plaintiff.

Robert Vacchhelli, Attorney General's Office, Hartford, CT, for Defendant.

## RULING AND ORDER

CHATIGNY, District Judge.

After review and over objection, the Magistrate Judge's recommended ruling is hereby approved and adopted.

### 1. The Estoppel Claim

Plaintiffs contend that "the regulation at issue did not simply 'lie fallow' . . . , it was affirmatively rejected by the Liquor Commission in 1991." Pls.' Objection to Recommended Ruling at 5. However, an agency cannot "reject" a regulation; it can only repeal a regulation in compliance with the provisions of the Uniform Administrative Procedure Act. See Con. Gen.Stat. § 4–168(e). No such repeal has occurred here. Thus, the regulation at issue remains valid. An estoppel will not lie against government when a valid regulation prohibits the relief sought. See Office of Personnel Management v. Richmond, 496 U.S. 414, 432, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("[W]e cannot accept the suggestion . . . that the terms of a statute should be ignored based on the facts of individual cases.").

Even assuming that a court has the power to estop a state from enforcing a valid regulation based on an official's statements (thereby giving the force of law to informal agency action that fails to comply with the UAPA), plaintiffs have not carried their heavy burden of demonstrating that fairness to them clearly outweighs the needs of the public. As Magistrate Judge Martinez correctly noted, plaintiffs do not allege that anyone ever told them that the regulation at issue would never be enforced again. Moreover, as members of (or potential entrants into) a highly regulated industry whose exotic dancing operations remain controversial, plaintiffs must have realized that the state was not forever forfeiting its right to enforce the regulation against them.

Magistrate Judge Martinez correctly recognized that this case is similar to *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), in that the detriment plaintiffs' claim is an inability to retain a benefit they were not entitled to in the first place.

### 2. The Taking Claim

Plaintiffs object to the recommended ruling on the taking claim on the ground that the extent of the harm they would suffer if the regulation were strictly enforced in the future presents an unresolved issue of material fact. Putting aside plaintiffs' previous argument that the case is appropriate for summary adjudication, the evidence plaintiffs rely on (a conclusory statement in the Pagliuco affidavit that if defendants are allowed to actively enforce the regulation at issue he will be forced out of business) does not warrant a trial. As defendants point out in their response to plaintiffs' objection, the topless dancing ban has been in effect since 1997 and plaintiffs continue to do business as they did before. Defs.' Mem. at 3. On this record, a reasonable trier of fact applying the pertinent factors would be compelled to find that plaintiffs' business properties have not been subjected to a regulatory taking.

Accordingly, defendants' motion for summary judgment is granted, defendants' motion for summary judgment is denied, and the action is dismissed. The Clerk may close the file.

So ordered.

*RECOMMENDED RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT*

MARTINEZ, United States Magistrate Judge.

Pending before this court are the defendants' Motion for Summary Judgment (doc. # 27) and the plaintiffs' Cross Motion for Summary Judgment (doc. # 34). For the reasons that follow, the undersigned recommends that the defendants' motion be GRANTED and the plaintiffs' motion be DENIED.

## I. *PROCEDURAL HISTORY*

The plaintiffs are all establishments which hold Connecticut liquor permits and provide entertainment in the form of female topless dancing. In 1997, the defendant Mark A. Shiffrin was the Commissioner of the State of Connecticut Department of Consumer Protection and the Chairperson of the State of Connecticut Liquor Control Commission (the "Liquor Commission"). The defendants Dominic Mascolo and Gary M. Koval were members of the Liquor Commission in 1997. The defendant Maria Delaney was and still is the Director of the Division of Liquor Control in the state Department of Consumer Protection. The defendant Ralph Marcarelli was a hearing officer for the Division of Liquor Control during the pertinent time.

In a four count complaint, the plaintiffs allege that in 1991, the defendants declared that they would no longer enforce the state regulations prohibiting topless dancing.[1] In their first count, the plaintiffs allege that the 1991 declaration was an "unchangeable regulation." In the second count, the plaintiffs claim that the defendants are equitably estopped from changing the enforcement policy. In the third count, the plaintiffs claim that the change in the policy amounts to a regulatory taking without just compensation. In the fourth and final count, the plaintiffs allege that enforcement of the topless dancing regulation would chill their First Amendment rights.

In a ruling dated March 8, 1999, U.S. District Judge Robert N. Chatigny granted the defendants' motion to dismiss counts one and four; the only remaining counts are the equitable estoppel and regulatory taking claims. The defendants now urge this court to grant summary judgment in their favor on these two remaining claims. In response, the plaintiffs cross moved for summary judgment.

## II. *UNDISPUTED FACTS*

In 1991, Liquor Commission officials met with several owners and/or employees of bars which offered female "exotic" dancing. The meeting concerned the enforcement of Reg. §§ 30–6–A24(d)[2] and (e)[3]

---

1. The record makes clear that it was not these particular defendants, but certain of the predecessors, who said they would not enforce the topless dancing regulations.

2. (d) No person shall be employed or otherwise used on permit premises while such person is unclothed or in such attire, costume or clothing as to expose any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals. No person on the permit premises over whom the permittee can reasonably exert control, shall be permitted to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person, nor shall any person or employee be permitted to wear or use any device or covering, exposed to view, which stimulates the breast, genitals, anus, pubic hair or any portion thereof.

3. (e) No entertainment shall be performed on any bar. No entertainer, dancer, or other person shall perform acts of or acts which simulate: sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law; the touching, caressing or fondling of the breasts, buttocks, anus or genitals; the displaying of any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals. No permittee shall permit any person or entertainer to remain in or upon the permit premises who expose to public view any portion of the hair, anus, cleft of the buttocks, vulva or genitals. Entertainers

which proscribed topless dancing. (Doc. # 29, ¶¶ 7–8). Several of the plaintiffs' representatives were in attendance.[4] (Doc. # 29, ¶ 16).

At the meeting, which was not recorded, the Liquor Commission officials informed the bar owners that the Liquor Commission would no longer penalize establishments that violated the ban on topless dancing as set forth in Reg. §§ 30–6–A24 (d) and (e). (Doc. # 29, ¶¶ 9, 10). It explained that if other violations were found, however, these sections could be enforced. (Id.) None of the Liquor Commission officials made any representation as to how long the suspension of enforcement would remain in effect. (Doc. # 29, ¶ 12).

In September 1997, a new Commissioner of the Liquor Commission was appointed. The Liquor Commission, in conjunction with the Department of Consumer Protection, announced that the state would resume enforcing the regulations at issue. The Liquor Commission published a statement in the Connecticut Beverage Journal which provided:

### EFFECTIVE IMMEDIATELY

Section 30–6–A24(d) and 30–6–A24(e) of the Regulations of Connecticut [Agencies], conduct of the permit premises, will be strictly enforced. Any purported agreements which contradict the mandate of Sections 30–6–A24(d) and 30–6–A24(e) are null and void.

(Doc. # 29, ¶ 17; Attachment C).

At the present time, all of the plaintiffs hold liquor permits and continue to offer female "exotic" dancers. (Doc. # 29, ¶ 18). The 1997 suspension of enforcement has not changed the nature of the plaintiffs' business to date. (Doc. # 29, ¶ 19). None

of the plaintiffs have been subjected to any type of discipline for violations of the topless dancing regulations. (Doc. # 29, ¶ 15).

### III. *DISCUSSION*

A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Summary judgment is not appropriate where, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the burden of showing the absence of any genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. *Equitable Estoppel*

In the first of the plaintiffs' remaining counts, they assert that the doctrine of equitable estoppel forecloses the defendants from enforcing the topless dancing regulations. They argue that they have reasonably relied to their detriment upon the government's "misrepresentation" that the topless dancing regulations would not be enforced. The crux of the plaintiffs' claim is that they suffered detriment because they acquired and/or invested money in their businesses based on the state's announcement that it would not enforce the ban on topless dancing. The defendants ask the court to grant summary judgment in their favor because, they argue, the undisputed facts show that the

---

must perform in one location and entertainers may not mingle with the patrons. However, the prohibitions contained in the last sentence may be waived by the department upon written request indicating the desirability and necessity for entertainers to mingle with the patrons.

4. Centerfolds, 2284 Corp., and Keystone Cafe were not in business at the time and did not have representatives present.

plaintiffs fail to prove that they suffered a detriment. The court agrees with the defendants.

■ In *Heckler v. Community Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), the Supreme Court addressed the issue of whether the doctrine of equitable estoppel may be applied against the government. The Court began by discussing generally the doctrine of equitable estoppel. Ordinarily, the court explained, the doctrine of equitable estoppel applies where

> one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act ... the first person is not entitled to ... regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired.

*Id.* at 59, 104 S.Ct. 2218 (citing Restatement (Second) of Torts § 894(1)(1979)). Put another way, a party asserting equitable estoppel must establish (1) that he relied on his adversary's conduct to his detriment and (2) that his reliance was reasonable. *See id.*

■ A different standard applies, however, where a party seeks to invoke the doctrine against the government. This is so because "[w]hen the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Id.* at 60, 104 S.Ct. 2218. For this reason, a party seeking to invoke principles of estoppel against the government must also prove an additional element—that the government or a gov-

ernment actor engaged in affirmative misconduct. *See City of New York v. Shalala,* 34 F.3d 1161, 1168 (2d Cir.1994); *see also Azizi v. Thornburgh,* 908 F.2d 1130, 1136 (2d Cir.1990).

■ The defendants claim that this case is factually similar to *Heckler,* 467 U.S. 51, 104 S.Ct. 2218, a case in which the Supreme Court held that the plaintiff failed to prove that it suffered detrimental reliance upon action taken by the government. The court agrees.

In *Heckler,* the plaintiff, Community Health Services of Crawford County, Inc. ("CHSCC"), a nonprofit corporation, entered into a contract with the Secretary of Health, Education, and Welfare ("HEW")[5] to provide home health care to Medicare recipients. At the time of the contract, the Medicare regulations provided that only certain of a provider's operating costs would be reimbursable under the Medicare program. As part of the Medicare program, CHSCC applied for and was awarded a grant under the Comprehensive Employment and Training Act ("CETA"). After it received the CETA grant, CHSCC asked Travelers Insurance Co., its fiscal intermediary in the Medicare program, whether the salaries of its CETA funded employees were reimbursable costs; the Travelers responded that they were. Relying on this information, CHSCC included the cost for the salaries in its cost report and received reimbursement for the funds. CHSCC used the funds to increase the size of its operations.

On several different occasions, CHSCC asked Travelers again whether the costs were reimbursable; Travelers repeatedly responded that they were. Travelers was required to refer CHSCC's inquiries in writing to the HEW. Travelers did not do this, however, until some time later. After it submitted the written inquiry, Travelers learned that the funds were not reimbursable and consequently determined

---

**5.** HEW is the predecessor to the government agency now known as the Department of Health and Human Services.

that it had overpaid CHSCC by over $70,-000. Travelers made a formal demand upon CHSCC for repayment. CHSCC filed a federal action, asserting that the government was equitably estopped from recovering the funds. The district court held that equitable estoppel did not apply because CHSCC's reliance on Travelers' advice was unreasonable. The Court of Appeals reversed and held that the government was estopped because its agent (Travelers) had engaged in affirmative misconduct. On appeal, the Supreme Court held that CHSCC failed to make out a case of equitable estoppel. The Supreme Court rejected CHCCS's argument that it detrimentally relied on Travelers' advice. The Court reasoned that CHSCC

> receive[d] an immediate benefit as a result of the double reimbursement. Its detriment is the inability to retain money that it should never have received in the first place. Thus, this is not a case in which the respondent has lost any legal right, either vested or contingent, or suffered any adverse change in its status.

Similarly, in this case, the plaintiffs have not lost a legal right. As in *Heckler*, the plaintiffs' detriment here is the inability to retain a benefit that they never should have had in the first place. The plaintiffs were not legally entitled to offer topless dancing, yet during the time period in which they were permitted to do so, they earned financial rewards. The plaintiffs were able to acquire and/or expand upon their businesses through access to funds which they never would have earned had the ban been enforced from its inception. They may not now be heard to complain that they can no longer reap the benefits

from engaging in an activity that the law forbids.[6]

The Second Circuit rejected a similar equitable estoppel claim, albeit in dictum, in *LaTrieste Restaurant and Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994). In that case, the defendant city had a zoning ordinance which prohibited the plaintiff from operating a cabaret before 10 p.m. The plaintiff operated a dinner/cabaret establishment before 10 p.m. The defendant knew of the plaintiff's operation, but did not seek to enforce the ordinance until the plaintiff began to offer topless dancing as entertainment. The plaintiff claimed that the defendant was selectively enforcing the ordinance in violation of its right to equal protection and also that the defendant was interfering with its First Amendment rights. In discussing the plaintiff's equal protection claim, the Second Circuit noted that "principles of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow." *Id.*[7] Similarly, in this case, the plaintiff may not now complain that the defendants are seeking to enforce regulations which until now went unenforced.

Because the plaintiffs have failed to offer evidence showing that they suffered a detriment,[8] the undersigned recommends that summary judgment enter on this count in favor of the defendants.

## B. *REGULATORY TAKING*

The defendants next submit that the plaintiffs fail to show that the regulatory scheme at issue here amounts to an unconstitutional taking. The court agrees and

---

**6.** Moreover, a close look at the record raises the question of whether plaintiffs have even shown they lost money—the only fact that is undisputed is that the plaintiffs received pecuniary benefits during the time in which they were allowed to offer topless dancing.

**7.** Unlike *LaTrieste*, this is not a case where the plaintiffs are alleging selective enforcement. *Id.*

**8.** Although not discussed much by the parties, the plaintiffs' claim also fails in that they failed to prove a "definite misrepresentation of fact." *See Heckler*, 467 U.S. at 58, 104 S.Ct. 2218. The plaintiffs do not offer proof, and indeed do not even allege, that any government official ever represented that the regulations would never be enforced.

recommends that summary judgment enter in the defendants' favor on this count.

An unconstitutional taking may take form in one of two ways: a property owner may suffer a physical invasion of his property, or a regulatory scheme may result in a taking where it goes "too far." *Meriden Trust and Safe Deposit Co. v. F.D.I.C.*, 62 F.3d 449, 454 (2d Cir.1995). It is the latter of the two that is at issue here.

■ "A regulatory taking—also known as inverse condemnation—occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner." *Southview Assoc. v. Bongartz*, 980 F.2d 84, 93 n. 3 (2d Cir.1992).

In these circumstances the Court must take into account several factors, on a case-by-case basis, to determine whether a governmental action has gone beyond regulation and effects a taking. Such factors include the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations. *Meriden Trust and Safe Deposit Co. v. F.D.I.C.*, 62 F.3d at 453 (citations and internal quotation marks omitted).

■ The plaintiffs claim that the change in enforcement policy amounts to a taking because "they will suffer substantial and irrevocable harm as a result of the Commissioner's 1997 announcement, which for all intents and purposes, will make the continuation of the plaintiffs' businesses impossible." Doc. # 28, p. 25. In support of their motion, the plaintiffs offer an affidavit which explains that if the defendants are permitted to enforce the regulations, the plaintiffs will be forced either to forego topless dancing and continue selling alcohol or continue topless dancing and change the nature of their businesses to "juice bars" (establishments which do not carry liquor permits). Becoming a "juice bar" is not a viable option, they argue, because operating a bar with a liquor permit is much more profitable. *See* Doc. # 35, Ex. A, ¶¶ 7c, 7d, 8.[9] The defendants counter that a change in the policy will leave the plaintiffs with an economically viable use for their property because they still retain

---

9. The owner of plaintiff 2284 Corporation offers this explanation:

    c. Giving up my liquor permit and becoming a "Juice Bar" is not a viable option. My bar makes money based upon the sale of alcohol, and it is solely based upon such income that I invested the money that I did in order to create a successful topless bar business. I profit more than a dollar, and sometimes more than two dollars, per glass of alcoholic beverage. To claim that I will be able to earn the same profit from selling soda or juice is ridiculous. The reality of the situation is that customers will not pay $5.00 for a glass of juice or soda, but they will for an alcoholic beverage. It is due to this traditional mark-up in alcohol that I have been able to stay in business thus far.

    d. Besides the obvious profit from liquor sales, I should note that in many cases, it is the sale of alcohol that gets the customers "through the door." Even more importantly, in my experience, and based upon my observations from having visited several "Juice Bars[,]" my customers stay in the bar for longer periods of time, and spend more money in my bar, both on alcoholic beverages and for tips for the dancers, than do customers of "Juice Bars."

    8. The profits I receive from the sale of alcoholic beverages, coupled with the fact that topless dancing draws customers from a much wider area than other types of entertainment, have enabled me to maintain a profitable business—and notably a saleable business. The Commission's recent change in policy has left me with two unacceptable choices: If I stop permitting topless dancing at my bar, I will not only lose my clientele, but dancers as well. Without the "draw" of topless dancing, I will be forced to rely upon local patrons in an extremely depressed area, rather than patrons who travel to my bar from other parts of the state. If I stop serving alcohol, the dancers will be able to dance topless, but I will lose most of the profits from the sale of alcoholic beverages which I have relied upon to support my family.

their liquor licenses and can continue to offer forms of female dancing, albeit not topless dancing.

 The law is clear that where the plaintiff retains an "economically viable" use of its property, an unconstitutional taking will not be found. *See J & B Social Club # 1, Inc. v. City of Mobile,* 966 F.Supp. 1131, 1140 (1996); *Hertz Corp. v. City of New York,* 1 F.3d 121, 131 (2d Cir.1993); *Penn. Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 127, 138 n. 36, 98 S.Ct. 2646, 2660, 2666 n. 36, 57 L.Ed.2d 631 (1978). Rather, "[a] takings claim is appropriate only where a governmental entity effectively denies the landowner *all* economically viable uses of the land." *Specialty Malls of Tampa v. City of Tampa,* 916 F.Supp. 1222, 1229 (M.D.Fla.1996), (emphasis added), *aff'd* 109 F.3d 770 (11th Cir.1997). That the plaintiffs may not profit as much as they would otherwise is of no consequence. *See Federal Home Loan Mortgage Corp. v. New York State Div. of Housing and Community Renewal,* 83 F.3d 45, 48 (2d Cir.1996)("Although [the plaintiff] will not profit as much as it would under a market-based system, it may still rent apartments and collect the regulated rents.")

Because the plaintiffs do not offer proof that the change in the regulation will deny them an economically viable use of their property, their claim must fail. Accordingly, the undersigned recommends that summary judgment enter in the defendants' favor on this count as well.

## IV. *CONCLUSION*

The undersigned recommends that the defendants' Motion for Summary Judgment (doc. # 27) be GRANTED and the plaintiffs' Cross Motion for Summary Judgment (doc. # 34) be DENIED.

Any party may seek the district court's review of this recommendation. *See* 28 U.S.C. § 636(b)(written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992) (failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

March 13, 2000.